**UNITED STATES FOOTBALL LEAGUE, Arizona Outlaws, Baltimore Stars Football Associates, Birmingham Stallions, Ltd., Chicago USFL Limited Partnership, Chicago Football Franchise Limited Partnership, Denver Gold Sports, Inc., Houston Gamblers, Ltd., IMI Express, Inc., Jax Professionals, Inc., LAEFC, Ltd., Memphis Showboats, Ltd., Football Generals, Inc., Bay Area Football Partners Ltd., Breakers Limited Partnership, South Texas Sports, Inc., and Orlando Football Partners, Inc., Plaintiffs–Appellees,**

v.

**NATIONAL FOOTBALL LEAGUE, The Five Smiths, Inc., Indianapolis Colts, Inc., Buffalo Bills, Inc., Chicago Bears Football Club, Inc., Cincinnati Bengals, Inc., Cleveland Browns, Inc., Dallas Cowboys Football Club, Inc., Rocky Mountain Empire Sports, Inc., The Detroit Lions, Inc., Green Bay Packers, Inc., Houston Oilers, Inc., Los Angeles Rams Football Company, Minnesota Vikings Football Company, Minnesota Vikings Football Club, Inc., New England Patriots Football Club, Inc., New Orleans Saints Louisiana Partnership, New York Football Giants, Inc., New York Jets Football Club, Inc., The Philadelphia Eagles Football Club, Inc., Pittsburgh Steelers Sports, Inc., St. Louis Football Cardinals Co., Chargers Football Company, San Francisco Forty–Niners, Ltd., Tampa Bay Area NFL Football, Inc., Pro–Football Club, Inc., Miami Dolphins, Ltd., Seattle Professional Football and Alvin R. Rozelle, individually and as Commissioner of the National Football League, Defendants–Appellants.**

No. 1265, Docket 89–7243.

United States Court of Appeals, Second Circuit.

Argued June 19, 1989.

Decided Oct. 10, 1989.

Before MESKILL and PIERCE, Circuit Judges, and TENNEY,* District Judge.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Leisure, *J.*, awarding plaintiffs-appellees the United States Football League and certain of its member clubs (hereinafter collectively referred to as "the USFL") $5,529,247.25 in attorney's fees against defendants-appellants the National Football League and certain of its member clubs (hereinafter collectively referred to as "the NFL") and taxing $62,220.92 in costs against the NFL for work done in connection with an antitrust suit that resulted in a jury verdict of $1.00, trebled to $3.00, in favor of the USFL. The district court's opinion is reported as *United States Football League v. National Football League*, 704 F.Supp. 474 (S.D. N.Y.1989).

We affirm.

## BACKGROUND

This case comes to us after what has been a much litigated and publicized dispute between the USFL and the NFL. Because the facts have been set forth in other published opinions, *see, e.g., United States Football League v. National Football League*, 842 F.2d 1335 (2d Cir.1988); *United States Football League v. National Football League*, 644 F.Supp. 1040 (S.D.N. Y.1986), familiarity with which is assumed, we will only briefly recount the history and background of this litigation.

The USFL brought suit in the United States District Court for the Southern District of New York against the NFL and its Commissioner Alvin R. Rozelle seeking declaratory and injunctive relief in addition to damages resulting from the NFL's alleged violations of sections 1 and 2 of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1, 2 (1982) (the Sherman Act) and common law. After a lengthy trial, the jury found that

Frank Rothman, New York City (William H. Mulligan, Barry H. Garfinkel, Shepard Goldfein, Skadden, Arps, Slate, Meagher & Flom, L. Gordon Harriss, Davis Polk & Wardwell, New York City, Paul T. Tagliabue, Covington & Burling, Washington, D.C., of counsel), for defendants-appellants.

Harvey D. Myerson, New York City (Mark E. Segall, Douglas R. Pappas, Myerson & Kuhn, New York City, of counsel), for plaintiffs-appellees.

* Honorable Charles H. Tenney, United States District Judge for the Southern District of New York, sitting by designation.

the NFL had willfully acquired or maintained monopoly power in the United States major league professional football market. Further, the jury found that the NFL's actual monopolization of the major league professional football market had caused injury to the USFL's business or property in violation of section 2 of the Sherman Act. The jury awarded the USFL damages of $1.00, which the court trebled to $3.00.

The USFL was not successful on its other claims. None of the defendants was found to have violated section 2 of the Sherman Act by monopolizing or attempting to monopolize a relevant television submarket. The jury also found that although one or more of the defendants had participated in a combination or conspiracy with intent to acquire or maintain monopoly power in the major league professional football market, there were no overt acts taken by any member of the conspiracy to try to achieve that result. Regarding the claim of violation of section 1 of the Sherman Act, the jury found that one or more of the defendants did participate in a contract, combination or conspiracy to exclude competition in the major league professional football market. However, the jury concluded that that combination did not constitute an unreasonable restraint of trade in violation of section 1 of the Sherman Act. Further, the jury concluded that the NFL's contracts with the three major television networks for the right to televise the NFL's regular season and championship games through the 1986–87 season were not an unreasonable restraint of trade in violation of section 1 of the Sherman Act. The jury found that a national network television broadcast contract was essential to successful competition in the United States and that the NFL's potential competitors could not duplicate the benefits of a network contract. However, the jury went on to conclude that the NFL did not have the ability to deny actual or potential competitors access to a national broadcast television contract. No liability was found on the USFL's common law claims of inten-

tional interference with the USFL's television contracts or advantageous business relations. Defendant Rozelle was not found liable on any of the USFL's claims.

Despite the jury's findings that the NFL had willfully acquired or maintained monopoly power in the United States major league professional football market and that such monopolization had injured the USFL, the jury awarded the USFL only $1.00 in damages. In accordance with section 4 of the Clayton Act, 15 U.S.C. § 15(a) (1982), the award was trebled to $3.00.

The district court denied the USFL's motion for judgment notwithstanding the verdict with respect to the antitrust claims that were rejected by the jury and for a new trial limited to the issue of damages for the section 2 violation that the jury found, or in the alternative for a new trial on both liability and damages for all of the antitrust claims. The USFL's request for injunctive relief was also denied. Further, the district court denied the NFL's motion for judgment notwithstanding the verdict with respect to the jury's verdict on the USFL's claim of actual monopolization. The district court declined to disturb any of the jury's findings. *United States Football League*, 644 F.Supp. 1040. We subsequently affirmed. *United States Football League*, 842 F.2d 1335.

The USFL then petitioned the district court, pursuant to section 4 of the Clayton Act, for an award of $7,662,709.13[1] as reasonable attorney's fees and expenses resulting from the litigation. This figure was reached after the USFL had exercised "billing judgment" and on its own accord reduced the fee by twenty percent. Additionally, the USFL sought fees for the time spent preparing the fee application. The USFL also filed a motion in the district court, pursuant to Fed.R.Civ.P. 54(d) and Local Civil Rule 11 of the Southern District of New York, for an award of $62,220.92 for costs incurred in litigating the case up to that point. Counsel for the USFL submitted affidavits to substantiate the

---

**1.** The district court erroneously stated that the adjusted claimed amount requested was $7,662,- 702.13.

amounts of their requests. The issues presented to the district court were (1) the adequacy of the documentation of the fees; (2) whether the USFL should receive attorney's fees at all; (3) the proper amount of those fees; and (4) whether the costs of the USFL's fee application were recoverable.

The district court reduced the amount of the ultimate fee award by ten percent because of vagueness in the documentation of the time billed. *United States Football League*, 704 F.Supp. at 477. The amount requested was reduced by an additional twenty percent to reflect what the court deemed was a "reasonable" fee under section 4 of the Clayton Act. *Id.* at 486. The district court concluded that "the reduced fees for the litigation of the main action total $5,271,504.55." *Id.* The court calculated that the aggregate amount of fees expended in relation to the fee application, up to that point, was $243,786.26. The court added the two fees, resulting in a total fee award of $5,515,290.87. *Id.* at 487. In the court's disposition of the case, it provided that within thirty days the USFL could submit additional affidavits concerning fees incurred in preparing the fee application. The court also found that $62,220.92 in costs were taxable against the NFL. *Id.* at 488. The USFL submitted additional affidavits regarding the amount of fees it had incurred in preparing the fee application. In a judgment filed February 8, 1989, the court awarded $5,529,247.25 in attorney's fees against defendants, except Rozelle, and taxed costs in the amount of $62,220.92 against defendants, except Rozelle.

The instant appeal followed. On appeal, the NFL contends that (1) the district court erred as a matter of law in holding that the USFL was entitled to attorney's fees and costs under section 4 of the Clayton Act; (2) the district court's award of over $5.5 million in attorney's fees was excessive; (3) the district court erred as matter of law in awarding attorney's fees for paralegals' time; and (4) the district court erred as a matter of law in holding that out-of-pocket expenses may be awarded as part of the attorney's fees. For the following reasons,

we affirm the judgment of the district court.

## DISCUSSION

### A. USFL's Entitlement to an Award of Attorney's Fees

Section 4 of the Clayton Act states, in pertinent part, that "*any person who shall be injured* in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and *shall recover* threefold the damages by him sustained, and the cost of suit, including *a reasonable attorney's fee.*" 15 U.S.C. § 15(a) (emphasis added). It is clear from the plain meaning of section 4 that an injury is all that is required for an award of attorney's fees. An award of attorney's fees to the injured party is mandatory. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 & n. 5, 98 S.Ct. 694, 697 & n. 5 (1978); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 261, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975); *Hydrolevel Corp. v. American Soc'y of Mechanical Eng'rs, Inc.*, 635 F.2d 118, 130 (2d Cir.1980), *aff'd*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). In the instant case, the jury found that the NFL's monopolization of the United States major league professional football market injured the USFL. An injury having been found, the awarding of attorney's fees to the USFL was compulsory.

The award of only nominal damages to the USFL does not affect its right to attorney's fees. As we noted in our earlier opinion in this case, the award of nominal damages in antitrust cases is not "suspect." *United States Football League*, 842 F.2d at 1377. Even where only nominal damages are recovered, attorney's fees awards have been given. *See, e.g., Home Placement Serv., Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1210 (1st Cir.1987); *Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 390 (8th Cir.), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974). That the USFL only received nominal damages is relevant in determining the amount of fees allowed and may be a factor used in reducing a fee

award, but it does not affect the entitlement to an award. *See Home Placement Serv.*, 819 F.2d at 1210.

As the First Circuit has stated, the purpose behind mandatory attorney's fees in antitrust cases is "to encourage private prosecution of antitrust violations by insulating plaintiffs' treble damage recoveries from the expense of legal fees." *Id.* What is important is encouraging the detection and cessation of anticompetitive behavior, not the amount of damages found. Because of the importance of the policy of encouraging private parties to bring antitrust actions, recovery of their reasonable attorney's fees must be sustained regardless of the amount of damages awarded.

In an attempt to circumvent the mandatory awarding of attorney's fees, the NFL contends that the district court erred in not applying the "prevailing party" standard in determining whether a party is entitled to an award of attorney's fees. The NFL, relying on *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), argues that only prevailing parties are entitled to attorney's fees and that a party is a "prevailing party" only if it " 'succeed[s] on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit.' " *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)); *see also Texas State Teachers Association v. Garland Independent School District*, — U.S. —, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (reaffirming *Hensley* approach). The NFL asserts that because the USFL was unsuccessful on many of its claims, it has not succeeded on significant issues in the litigation, has not achieved the benefits it sought in bringing suit and therefore is not entitled to an award of attorney's fees. We disagree. We reach the same conclusion as the district court that the use of the *Hensley* prevailing party analysis is not warranted in this case.

First, there is no requirement in section 4 of the Clayton Act that an antitrust plaintiff be a "prevailing party" to recover attorney's fees. The term "prevailing party" appears nowhere in section 4 of the Clayton Act. All that is required is an injury. *See supra.* As stated *supra*, an injury was found, therefore the award of attorney's fees was automatic.

Second, *Hensley* involved the award of attorney's fees under The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982), which provides, in pertinent part, that "the court, *in its discretion*, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (emphasis added). Interestingly, the legislative history of section 1988 indicates that Congress "intended that the amount of fees awarded under [section 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." S.Rep. No. 1011, 94th Cong., 2nd Sess. 6 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5913; *see also McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir.1983). However, Congress did not utilize the mandatory awarding of fees scheme found in section 4 of the Clayton Act, but instead adopted a discretionary standard. Because *Hensley* concerns the discretionary award of attorney's fees under 42 U.S.C. § 1988, rather than the mandatory ordering of attorney's fees awards under 15 U.S.C. § 15(a), it is of limited applicability. Given the clear language of section 4 of the Clayton Act, an award of attorney's fees was justified.[2]

The NFL also claims the USFL is not entitled to attorney's fees because "the USFL failed to *offer* proof of damages" in support of the claim on which it prevailed. Although the USFL's damages evidence, elicited through the testimony of Dr. Nina W. Cornell, focused primarily on damages

---

**2.** There are a number of statutes that also mandate attorney's fees but, unlike the Clayton Act, also apply the "prevailing party" concept discussed in *Hensley*. *See, e.g.,* 7 U.S.C. § 210(f); 15 U.S.C. § 26; *id.* § 4304(a); 18 U.S.C. § 924(d)(2)(A)–(B); 42 U.S.C. § 6104(e)(1); *id.* § 11113. We do not address how the questions before us would be resolved in the context of cases covered by these statutes.

resulting from the NFL's monopolization of television contracts with the three major networks, the USFL did offer it and it may have affected the jury's finding of general antitrust damages. As the district court stated in an earlier opinion, "the jury's rejection of plaintiffs' television-related Section 1 claims does not mean that the jury could not have properly considered some of the NFL's television-related conduct to have been anticompetitive." *United States Football League*, 644 F.Supp. at 1058. The court explained that "the jury was allowed to consider defendants' television-related behavior ... as probative of the 'purpose and character' of the remainder of NFL conduct under the jury's scrutiny." *Id.* at n. 15 (quoting *United Mine Workers v. Pennington*, 381 U.S. 657, 670–71 n. 3, 85 S.Ct. 1585, 1593–94 n. 3, 14 L.Ed.2d 626 (1965)). As the district court held in a recent opinion, "[t]he USFL's damages proof, while relating solely to television, did seek generally to establish damages from the unlawful monopolization of professional football. It cannot be said that such proof had no effect on the jury's finding of injury." *United States Football League*, 704 F.Supp. at 480. The court went on to state that "it cannot be said that the television evidence was completely distinct, either factually or legally, from the broad monopolization claim that plaintiff prevailed upon." *Id.* at 480–81. The district court's determination was correct.

Neither this Court nor the district court can know for certain what evidence influenced the jury's decision. It is at least plausible that the evidence of the damages from television-related conduct influenced the jury's finding of generalized monopolization damages. The jury did find an injury, which led to a finding of damages, albeit only $1.00. However, a finding of an injury is all that is required for an award of attorney's fees for an antitrust violation.

In sum, we agree with the district court's conclusion that "[t]he award of counsel fees itself is ... a non-issue." *Id.* at 480.

### B. The Amount of the Attorney's Fees Award

In determining the amount of the award, a "lodestar" figure is set by "multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). The lodestar figure may be adjusted upward or downward, however, there is "[a] strong presumption that the lodestar figure ... represents a 'reasonable' fee." *Id.* at 565, 106 S.Ct. at 3098.

■ The district court found that "[s]ome reduction of the gross lodestar amount is undoubtedly proper in this case, given the limited success of the USFL, and its recovery of only nominal damages." *United States Football League*, 704 F.Supp. at 484. The lodestar, as such, was reduced by twenty percent. The NFL contends that the lodestar figure should have been reduced more. We note that a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified. *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d Cir.1976). The NFL has failed to meet that burden here. In this case, the district court acted within its discretion in considering a number of factors to determine the reasonableness of the amount of the attorney's fees award.

### 1. NFL's Objections to Elements of the Fee Application

■ The NFL challenges the district court's failure to exclude certain elements that the USFL claimed in its fee application. Specifically, the NFL objects to the district court's failure to exclude attorney's fees for time devoted to the (1) television contract claim and consequent damages; (2) allegations dismissed before trial; and (3) unsuccessful collateral matters.

In *Hensley*, the Supreme Court noted that work on an unsuccessful claim that is based on different facts and legal theories than a successful one may not be included in the fee award. *See Hensley*, 461 U.S. at 434–35, 103 S.Ct. at 1939–40. However, a

plaintiff's diverse claims for relief may "involve a common core of facts or ... be based on related legal theories." *Id.* at 435, 103 S.Ct. at 1940. In that instance, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* The Court held that under those circumstances, the district court "should focus on the significance of the overall relief obtained by the plaintiff." *Id.* Where "a plaintiff has achieved only partial or limited success," full compensation for attorney's fees would not be reasonable. *Id.* at 436, 103 S.Ct. at 1941. The district court may either "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. at 1941.

In the instant case, all of the USFL's claims involve a "common core of facts" and are "based on related legal theories." *Id.* at 435, 103 S.Ct. at 1940. However, the USFL was successful on only one of its claims. To compensate for this limited success, the district court exercised its discretion by reducing the amount of the award. Because the district court took into account the USFL's lack of success by reducing the overall attorney's fees award by a certain percentage, allowing compensation for time spent on all of the claims was correct.

Here, as previously discussed, the television damages claim was related to the general claim of monopolization of the professional football market in the United States. *See supra.* Therefore, the NFL's objection to the inclusion of time spent in relation to this claim must fail.

The NFL also objects to the district court's failure to exclude time spent by the USFL's attorneys on allegations that were dismissed prior to trial—namely, allegations concerning NFL conduct regarding stadium leases, disparagement and game officials. The work done in relation to those allegations was properly included in the fee award because it was related to the same claim upon which the USFL eventually prevailed. That those allegations were dismissed before trial does not necessitate their exclusion from the basis of the fee award. The development of factual allegations and theories to support a claim is part of the normal litigation process and should be compensable.

The same reasoning holds true for the NFL's contentions that the USFL should not receive attorney's fees for work related to "unsuccessful collateral matters," such as attempts to introduce evidence of prior judgments against the NFL and evidence of congressional testimony by NFL personnel. The district court opined that "to the extent that this time was spent on alternative ways to obtain relief for the NFL's illegal monopolization of professional football, it is fully compensable." *United States Football League*, 704 F.Supp. at 481. We agree. These "collateral issues" all stem from and are related to a common core of facts—the alleged antitrust violations. We have previously held that the evidence of the prior judgments was "at best marginally probative" with respect to the issues in this litigation. *United States Football League*, 842 F.2d at 1372. We also agreed with the Third Circuit's declaration that in this context, legislative process evidence was " 'irrelevant.' " *Id.* at 1375 (quoting *Mid–South Grizzlies v. National Football League*, 720 F.2d 772, 784 (3d Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984)). Thus, time spent by USFL attorneys on these issues is not fully compensable. While the district court did not specifically exclude time spent on these issues, it did reduce the lodestar. Because it was within the district court's discretion to do so, *see Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941, and we see no abuse of that discretion, we will not disturb the fee award because of the inclusion of time spent on these matters.

In sum, because the USFL was successful in proving an antitrust injury, all that is required under section 4 of the Clayton Act, it is entitled to attorney's fees for all work done in relation to the common core of facts that resulted in that injury. The district court correctly included these amounts in the fee award.

2. Determination of a "Reasonable" Attorney's Fee

■■■ As the Supreme Court emphasized in *Hensley*, "the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. The district court's determination should be overturned only upon a finding of an abuse of that discretion. *Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 650 (7th Cir.1985).

In adjusting a lodestar figure, the Fifth Circuit developed a set of factors that may be taken into consideration. Those factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). As the Supreme Court noted in *Hensley*, in adjusting a fee upward or downward, a "district court ... may consider ... factors identified in *Johnson* ... though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1939 n. 9.

Here, the district court took the *Johnson* factors into consideration in determining a "reasonable" fee. *United States Football League*, 704 F.Supp. at 485 & n. 12. Applying the *Johnson* factors, the district court found that the only factor indicating a reduction in the lodestar amount was an evaluation of the results obtained. Focusing on the results obtained as "a crucial factor," *id.* at 485, the district court went on to determine what would be a "reasonable" award given that the USFL did not succeed in proving violations and damages regarding many of its claims.

The district court noted that the USFL exercised billing judgment and in recognition of its limited success, the USFL had already reduced the basic lodestar by twenty percent. According to the district court, the adjusted claimed amount was $7,662,702.13. The USFL also pointed out that it had charged historic billing rates, instead of current rates, and that it had understated the time actually spent on the litigation. Because of the USFL's limited success, the district court "fe[lt] compelled," *id.* at 486, to reduce the amount claimed by the USFL by an additional twenty percent over the ten percent reduction that had previously been imposed for vagueness in the documentation of certain time entries. The district court believed that the resulting thirty percent reduction "reflect[ed] a 'reasonable' fee under 15 U.S.C. § 15." *Id.* The NFL now challenges the amount of the reduction, claiming that the reduction should have been greater. We decline to modify the amount of the reduction imposed by the district court.

As the amount of an award is within the discretion of the district court, so is the amount of any reduction. The district court considered the relevant factors in determining the amount of the reduction to impose. We find no abuse of discretion and conclude that the amount of the reduction and of the award should stand.

*C. Compensation for Paralegal Time*

■■■ The district court awarded $1,042,882.55 in attorney's fees for non-lawyers' services. The NFL argues that the district court erred in declining to follow our decision in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974), where we stated that time billed for paralegals and other non-lawyers "cannot be considered as input in the fee award determination." *Id.* at 473. The district court, citing "[v]arious

intervening developments in the law, as well as a practical evaluation of the billing practices of law firms," *United States Football League,* 704 F.Supp. at 483, concluded that *Grinnell* was "no longer good law." *Id.* The Supreme Court's recent decision in *Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), confirms that the district court's analysis was correct.

In *Jenkins,* which involved the determination of a reasonable attorney's fee under 42 U.S.C. § 1988, the Supreme Court stated that "[c]learly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney." *Id.* —— U.S. at ——, 109 S.Ct. at 2468-69. Accordingly, the Court "t[ook] as [its] starting point the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." *Id.* Thus, without specifically mentioning it, *Jenkins* effectively overruled *Grinnell* on this issue. Paralegals' time is includable in an award of attorney's fees.

After deciding that attorney's fees awards could include time billed by paralegals and other non-lawyers, the Supreme Court in *Jenkins* went on to address "[t]he more difficult question [of] how the work of paralegals is to be valued in calculating the overall attorney's fee." *Id.* The Court concluded that "the prevailing practice in a given community" is to govern whether paralegals' time is billed separately, and whether it is billed at cost or at market rates. *Id.* —— U.S. at ——, 109 S.Ct. at 2471-72.

The district court did not have the benefit of *Jenkins* when it made its determination regarding paralegals' fees. Therefore, it did not make a finding of fact concerning the prevailing practices in New York law firms for billing paralegals' time. However, an inference that the practice of New York law firms is to bill paralegal time at hourly or market rates may be drawn from the affidavits of Mark E. Segall of Myer-

son & Kuhn, counsel for the USFL. Regarding the fees for paralegals, Segall stated that, based on his "personal experience and familiarity with the billing rates ordinarily charged by comparable New York City firms for comparable work, the rates at which recovery is sought are reasonable." The evidence that is in the record that the billing rates were reasonable was not controverted by the NFL.

Given the Supreme Court's endorsement of billing at market rates, we hold that the hourly market rate for paralegal services in New York City is includable in the attorney's fees award in this case. We agree that billing for paralegals' time in this manner "makes economic sense," and " 'encourages cost-effective delivery of legal services.' " *Jenkins,* —— U.S. at ——, 109 S.Ct. at 2471-72 (quoting *Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836, 846 (7th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985)).

The district court's decision foreshadowed the Supreme Court's decision in *Jenkins.* We are satisfied that the district court would have reached the same conclusion under the *Jenkins* test. Therefore, we see no need to remand for a determination of the prevailing practice in New York law firms for billing paralegals' time. It was neither error nor an abuse of discretion to include paralegals' fees in the attorney's fees award. Consequently, the award will stand.

### D. The Award of Out–of–Pocket Expenses

■ The NFL challenges the inclusion of out-of-pocket expenses that were billed directly to the USFL in the award of attorney's fees. However, we have held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 283 (2d Cir.1987). The out-of-pocket expenses at issue here were " 'incidental and necessary' to the representation" of the USFL. *Id.* (quoting *Northcross v. Board of Education,* 611 F.2d 624, 639 (6th Cir.1979),

<span style="float: right;">**417**</span>

*cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980)). Thus, they were properly included in the amount that may be awarded pursuant to Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 (1982).

## CONCLUSION

The judgment of the district court is affirmed in its entirety.