**Kimberly G. LILLY, Plaintiff,**

v.

**COUNTY OF ORANGE, Deputy Sheriff Jeanne Bunting and Deputy Sheriff Brian Hayen, Defendants.**

**No. 94 Civ. 5703 (WCC).**

United States District Court, S.D. New York.

Jan. 10, 1996.

Shamberg Marwell Hocherman Davis & Hollis, P.C., Mount Kisco, New York (P. Daniel Hollis, III, Ann Marie Collins, of counsel), for Plaintiff.

Richard B. Golden, County Attorney for Orange County, Goshen, New York (John J. Gibson, of counsel), for Defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Lilly brought an action pursuant to 42 U.S.C. § 1983, alleging that the Orange County Sheriff's Department and two deputy sheriffs had violated plaintiff's constitutional rights. Plaintiff sought $2 million in damages from the Sheriff's Department; $2 million in damages from Deputy Sheriff Hayan; and $2 million in damages from Deputy Sheriff Bunting. After a jury trial, the jury found that Deputy Sheriff Bunting had violated section 1983, and awarded plaintiff $11,500 in compensatory damages. Plaintiff now seeks attorney's fees and costs, pursuant to 42

U.S.C. § 1988, in the amount of $37,968.75 (including $539.25 in disbursements).

### DISCUSSION

■ Section 1988 provides that, in a section 1983 action, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 94–1558, p. 1 (1976); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

Defendants argue that a downward adjustment of fees is appropriate because (1) the amount of time spent and hourly rates charged were not reasonable and (2) plaintiff did not achieve total success on her claims.

■ As an initial matter, a plaintiff must be a "prevailing party" to recover attorney's fees under section 1988. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Plaintiff Lilly was awarded damages on her section 1983 claim against one of three defendants. Clearly, Lilly is a "prevailing party." *See id.* ("A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (civil rights plaintiff awarded "nominal damages" of one dollar out of the $17 million requested was a "prevailing party").

■ After crossing this "statutory threshold," the district court must determine what fee is "reasonable." *Id. Hensley* provides that the starting point is the hours reasonably expended multiplied by a reasonable hourly rate (the "lodestar" method). As required by *Hensley,* plaintiff has submitted a schedule that details the amount of time spent on various matters, and the amount charged per hour. *See* Ex. C. Defendants argue that "the fees requested by plaintiff's attorney should be reduced by at least thirty-five percent (35%) because the hours expended and the hourly rates each is excessive." Def.'s Mem. of Law in Opp. to Application for Attorney's Fees, at 5 ("Def.'s Mem."). For the reasons discussed below, we find that an award of $35,313.25, including disbursements, is a reasonable fee.

### I. Hours reasonably expended times reasonable hourly rate

#### A. Reasonable hourly rate

Defendants argue that an attorney's limited experience in prosecuting or defending civil rights cases, as well as the small size of his firm, warrant a reduction of the lodestar amount. Def.'s Mem. at 5 (citing *Malarkey v. Texaco, Inc.,* 794 F.Supp. 1237, 1245–46 (S.D.N.Y.1992), *aff'd,* 983 F.2d 1204 (2d Cir. 1993)). Plaintiff's counsel charged $225 per hour for work performed by Mr. Hollis; $200 per hour for work by Mr. Frank (both partners); and $80 per hour for work by a paralegal.

##### 1. Mr. Hollis' hourly rate

■ Defendants argue that $225 per hour is excessive for a lawyer with limited civil rights litigation experience who is a partner in a small firm in Westchester. *See Malarkey,* 794 F.Supp. 1237 (plaintiffs' counsel awarded $175 per hour); *Rivera v. Dyett,* 762 F.Supp. 1109 (S.D.N.Y.1991) (plaintiff's counsel awarded $165 per hour). Defendants urge that $165 per hour is a more reasonable rate than $225 per hour. Neither *Malarkey* nor *Rivera* justifies such an adjustment.

■ Plaintiff's counsel in this case seeks the hourly rate that he normally charges. *See* Ex. B (setting forth the hourly rates charged by each attorney and paralegal in counsel's firm). The actual rate that counsel can command in the market place is evidence of the prevailing market rate. *See, e.g., Soba v. McGoey,* 761 F.Supp. 273, 275, 278 (S.D.N.Y.) (court adopted the normal billing rates of the plaintiff's law firm, which represented plaintiff on a pro bono basis, even though the plaintiff's attorneys lacked civil rights litigation experience), *aff'd,* 935 F.2d 1278 (2d Cir.), *cert. denied sub nom. McCom-*

*iskey v. Soba,* 502 U.S. 909, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991). In *Rivera,* cited by defendants, the court awarded an hourly rate that was the average of counsel's normal fees of $150 to $180 per hour. *Malarkey* also is of no avail to defendants because that court cited specific reasons (none which are applicable here) for adjusting counsel's fees.

■ The district court has broad discretion in deciding the reasonable hourly rate. Mr. Hollis normally charges $225 per hour, and defendants have failed to submit specific contrary evidence tending to show that a lower rate would be appropriate. We conclude that $225 per hour is a reasonable hourly rate for a partner with Mr. Hollis's litigation experience practicing in Westchester.

### 2. Mr. Frank's hourly rate

■ Defendants argue that the rate of $200 per hour charged by Mr. Frank is excessive because (1) it is not clear whether Mr. Frank was a partner or an associate and (2) plaintiff provided no information demonstrating the extent of Mr. Frank's civil rights or litigation experience. Defendants urge this court to award $100 per hour for Mr. Frank's work, based on *Malarkey,* where the court awarded $100 per hour for work performed by an associate. However, plaintiff indicates in her Reply papers that Mr. Frank is a partner, not an associate. Furthermore, defendants cite no authority for the proposition that a court should reduce an attorney's hourly rate for lack of experience. An attorney's hourly rate already should account for experience (general litigation or otherwise), and the rates normally charged provide compelling evidence of prevailing market rates. Therefore, we decline to adjust Mr. Frank's hourly rate.

### 3. Paralegal's hourly rate

■ Defendants argue that the rate of $70 per hour charged for paralegal work is excessive for a Westchester law firm.[1] Because

plaintiff provides no evidence describing the experience, training and salary of the paralegal used, defendants argue that a 50% reduction is appropriate. Def.'s Mem. at 6. Defendants then argue that $25 per hour is a reasonable fee for paralegal services. *See Pickman v. Dole,* 671 F.Supp. 982, 990 (S.D.N.Y.1987).

■ We agree that $80 per hour charged for paralegal work in this case is excessive. We find that a 50% reduction in the fee charged for paralegal services is warranted.[2]

### B. Reasonable amount of time spent

Defendants attack the reasonableness of the hours expended by plaintiff's counsel on the following grounds: (1) failure to delegate simpler litigation tasks to associates in the firm; (2) improper accounting of travel time; and (3) unreasonableness of time expended in specific instances.

### 1. Failure to delegate

■ Defendants argue that partner level attorneys who are paid premium rates should not be fully compensated for time expended on tasks that can be delegated to lower paid associates. Defendants argue that 39 hours expended by Mr. Hollis "could have been delegated to a junior associate with little supervision." Def.'s Mem. at 7. Specifically, defendants cite the following hours:

a) 8.6 hrs. (4/14/93–7/13/93, 8/30/93)—preparation of the notice of claim and the performance of pre-litigation conferences;

b) 7.0 hrs. (10/15/93)—prepare for and attend 50h hearing;

c) 1.4 hrs. (10/18/93, 11/18/93, 11/19/93)—preparation of medical release and letters to doctors;

d) 6.2 hrs. (11/16/93, 2/8/94–2/16/94)—revision of complaint;

e) 2.5 hrs. (2/8/94)—review 50h transcript;

f) 13.3 hrs. (11/30/94–12/6/94)—prepare for and conduct EBTs.

---

**1.** According to counsel's time sheets, counsel actually charged $80 per hour for 10.2 hours of paralegal services.

**2.** There is an entry for 2.5 hours charged at $70 per hour for work performed by a "legal secretary." We likewise reduce this portion of the fee by 50%, to reach a combined deduction for paralegal and legal secretary work of $495.50.

■ The proper test is an ex ante, not ex post, inquiry whether or not certain tasks should have been assigned to more junior level attorneys. We find counsel's delegation of tasks to be reasonable.[3]

### 2. Travel time

■ Defendants argue that an attorney's normal rate should be charged for travel time only when it can be shown that legal work was performed during travel. The Second Circuit has not ruled specifically on the compensability of attorney travel time. However, it has indicated that "a different rate of compensation may well be set for different types of litigation tasks." *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505 (2nd Cir.1980).

We find it appropriate to reduce attorney's fees for travel time by 50% for lack of productivity. We find a reduction in this case particularly appropriate because counsel drove himself to conferences and other appointments, rather than using public transportation, in which case he might have demonstrated sufficient productivity to warrant his full rate for travel time. Because counsel has not separately allocated fees for travel time, we must estimate how much time was billed for travel. Based on counsel's time sheets, we estimate that approximately ten hours were billed for travel at the rate of $225 per hour. We reduce this portion of the fees by 50%, or $1,125.

### 3. Time charged during jury deliberations and for the instant motion

■ Defendants dispute the reasonableness of various other entries by plaintiff's attorney. Specifically, defendants argue that the 18 hours billed during two days of jury deliberations is excessive. Because plaintiff's counsel has not specified what other work was performed beyond the seven hours per day during two days of jury deliberations, we deduct two hours for each of the two days of jury deliberations, or $900. In addition, we deduct the $135 charged for a post verdict conference with a juror.

■ In addition, defendants argue that 6.5 hours expended by an associate at $165 per hour to research the instant motion for attorney's fees should be excluded. "An attorney should not be compensated for learning the basics of Section 1988 attorney fee litigation." Def.'s Mem. at 10. In the alternative, defendants argue that a rate of $165 per hour for associate work is excessive, and that $100 per hour is more reasonable.

■ Reasonable attorneys' fees incurred in connection with preparation of the petition to recover attorneys' fees under section 1988 and the related litigation are recoverable. Based on the record, we conclude that the 6.5 hours were not spent simply "learning the basics of Section 1988 attorney fee litigation." The actual drafting and revising of the memorandum in support of the application is included in this time. In fact, the associate who researched and drafted the brief for this motion was quite efficient.

■ With the exceptions noted by the adjustments above ($2,655.50 in total), the amount of time expended and the hourly rate charged are reasonable. There is a "strong presumption" that the lodestar figure represents a "reasonable" fee. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992); *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992), *cert. denied sub nom. Bethlehem Steel Corp. v. Grant*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940; *Grant*, 973 F.2d at 101. A court must consider other factors which may cause us to adjust the fee. One such "important factor" is the "results obtained." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40.

### II. Adjustments after consideration of the "results obtained"

■ This consideration is particularly important where a plaintiff is deemed "pre-

---

**3.** Defendants argue that the fact that "Associate" Mr. Frank was sent to the EBT of plaintiff Lilly is evidence that a partner was not required to perform this level of work. However, Mr. Frank is a partner, not an associate.

vailing" even though she succeeded on only some of her claims for relief:

> In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [s]he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. The party advocating a departure from the lodestar calculation bears the burden of establishing that an adjustment is necessary to reach a reasonable fee. *United States Football League v. National Football League,* 887 F.2d 408, 413 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990); *Grant,* 973 F.2d at 101.

### A. Failure to prevail on claims unrelated to successful claim

 Defendants argue that plaintiff's attorney is not entitled to fees for time expended on unsuccessful issues which are unrelated and hence severable. In a suit where a plaintiff presents "in one lawsuit distinctly different claims for relief that are based on different facts and legal theories ... counsel's work on one claim will be unrelated to his work on another claim." *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1940. "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* at 435, 103 S.Ct. at 1940. Defendants argue that a 20% reduction is warranted because plaintiff's unsuccessful claim against the Sheriff's Department alleging a municipal policy of inadequate training and supervision is legally and factually distinct and therefore severable from her successful claim against one of the individual deputy sheriffs.

Defendants' reliance on this principle is misplaced. The Supreme Court held that "[w]here the plaintiff has failed to prevail on a claim that is *distinct in all respects from his successful claims,* the hours spent on the unsuccessful claims should be excluded...."

*Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943 (emphasis added). In the instant case, plaintiff's unsuccessful claim against the County alleged that the Sheriff's Department was directly responsible for the deputy sheriffs' specific actions that were the subject of the individual claims against the deputy sheriffs. Therefore, we conclude that the claims are not "distinct in all respects." *Id.* The Supreme Court has noted that

> [i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claim for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Id.* at 435, 103 S.Ct. at 1940. Therefore, we decline to exclude any billable time as being attributable to unsuccessful claims unrelated to those upon which plaintiff did succeed.

### B. Lack of total success

 Even where plaintiff's unsuccessful and successful claims are interrelated, if a plaintiff achieves only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941. A determination of whether such circumstances warrant adjustment is more complex than the downward adjustment that would be required upon a finding of an unsuccessful unrelated claim. "The most critical factor is the degree of success obtained." *Id.* The lodestar figure may be reduced in situations in which plaintiffs receive only nominal damage awards. *Grant,* 973 F.2d at 101 (citing *United States Football League,* 887 F.2d at 411–12). The Supreme Court has specifically held that the district court has broad discretion in adjusting the lodestar calculation after taking into account the overall success of the litigation:

> Although the plaintiff often may succeed in identifying some unlawful practices or

conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. . . .

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.

*Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941. It must be emphasized that it is the court's "responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" *Farrar v. Hobby,* 506 U.S. at 115, 113 S.Ct. at 575 (citing *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 945–46, 103 L.Ed.2d 67 (1989)). Therefore, we may reduce the amount of attorney's fees to reflect the limited success achieved by plaintiff in this case.

Defendants argue that plaintiff's success in this case clearly was limited. Plaintiff sought a total of $6 million in compensatory damages from the three defendants and punitive damages against the two individual defendants. Plaintiff's claims against the County and against one of the individual deputy sheriffs were unsuccessful. The jury awarded $11,500 in compensatory damages (no punitive damages) against Deputy Sheriff Bunting. However, an analysis of each claim against each defendant reveals that, despite the relatively low monetary judgment, no reduction in attorney's fee is warranted.

1. No reduction in fee for small award on claim against Deputy Bunting.

The Second Circuit has rejected a proportionality standard in awarding attorney's fees. *See, e.g., Grant,* 973 F.2d at 102; *Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522 (2d Cir.1991). For example, in *DiFilippo v. Morizio,* 759 F.2d 231 (2d Cir. 1985), the Second Circuit reversed the district court's decision to reduce the lodestar amount by 50% to reflect the small size of the award and the straightforward nature of the case in a housing discrimination suit:

In the instant case, the district court found the hours expended by counsel to be rea-

sonable and the representation afforded to be skillful. Nevertheless, it reduced the lodestar figure by 50 percent because the damage award was low and the case was straightforward and non-novel. We believe a reduction made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation.

759 F.2d at 235. *See also City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986):

Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards. . . .

Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.

477 U.S. at 574–75, 106 S.Ct. at 2694–95 (4–1–4 decision).

Under one line of authority, however, a prevailing party may be denied attorney's fees altogether if the victory is "technical" or the award only "de minimis." *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Texas State Teachers Association v. Garland Independent School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989). In *Farrar,* the plaintiff filed a lawsuit demanding $17 million from six defendants. After 10 years of litigation and two trips to the Court of Appeals, he got one dollar from one defendant. Plaintiff sought attorney's fees under section 1988, and the district court awarded plaintiffs $280,000 in fees, $27,932 in expenses, and $9,730 in prejudgment interest. *Farrar,* 506 U.S. at 105, 113 S.Ct. at 570. Despite finding that plaintiff was a "prevailing party," the Court reversed the award of attorney's fees:

Although the "technical" nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once the civil

rights litigation materially alters the legal relationship between the parties, "the degree of the plaintiff's overall success goes to the reasonableness" of a fee award under [Hensley]. Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." [Hensley]. In this case, petitioners received nominal damages instead of the $17 million in compensatory damages that they sought. This litigation accomplished little beyond giving petitioners "the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated" in some unspecified way. [*Hewitt v. Helms,* 482 U.S. 755, 762, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654] (1987). "Where the recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." [*Riverside v. Rivera,* 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring in judgment)].

In a civil rights suit for damages ... the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury.... When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief ... the only reasonable fee is usually no fee at all.

*Farrar,* 506 U.S. at 115, 113 S.Ct. at 574–75. While the rule that attorneys' fees should only be awarded proportionate to the ratio between damages sought and actually obtained has been rejected, *Riverside,* 477 U.S. at 576–82, 106 S.Ct. at 2695–98; *Grant,* 973 F.2d at 102, there can be no question that a court may consider the limited success in obtaining the relief being sought in exercising its discretion to adjust the amount of attorney's fees to be awarded. In this case, after considering the relatively minor monetary success plaintiff achieved, we conclude that the attorney's fees submitted are nonetheless reasonable.

Although plaintiff in this case received only a small portion of the total money damages sought, the judgment is more than nominal.

Furthermore, the importance of plaintiff's victory on her civil rights violation claim should not be belittled by focussing solely on the monetary measure of her judgment. *See Farrar,* 506 U.S. at 121, 113 S.Ct. at 578 (O'Connor, J., concurring) ("[A]n award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved.").

2. No reduction in fee for lack of success on claim against Deputy Hayan or the County

Defendants do not dispute that plaintiff's unsuccessful claim against Deputy Hayan was based on the same factual and legal issues as plaintiff's successful claim against Deputy Bunting.

As discussed above, the claim against the County was not a "completely unrelated claim" within the meaning of *Hensley.* In addition, the record indicates that plaintiff's counsel did not expend resources unreasonably.

In *Lunday v. City of Albany,* 42 F.3d 131 (2d Cir.1994), the Second Circuit was faced with facts similar to those here. In *Lunday,* the plaintiff named as defendants the City and four of its police officers. Two of Lunday's claims invoked section 1983, and the six others were pleaded under state law. The jury returned a verdict only against one police officer, and only on the excessive force claim (one of the section 1983 claims). The jury awarded damages in the sum of $35,000, of which $20,000 was designated as compensatory, and $15,000 as punitive. The jury exonerated the City and the other individual defendants. Lunday's application for attorney's fees pursuant to section 1988 was referred to a Magistrate Judge. The court awarded attorney's fees in the amount of $115,425, together with $3,487.08 in expenses, for a total of $118,912.08, representing the full amount of Lunday's fee request, except that the fees requested for the preparation and argument of the fee application itself were found to be excessive and were reduced from $21,915 to $10,000.

The Second Circuit remanded the lower court's decision to reconsider the City's specific objections to hours which allegedly were not expended reasonably:

[T]he level of deference expressed in the order leaves us in doubt as to whether all was done that should have been done.... We remand this case for reconsideration consistent with this opinion because the recitation of reasons for accepting all of counsel's pre-verdict requests for fees suggests that the Magistrate Judge may have failed to critically examine these requests.

*Lunday,* 42 F.3d at 134. However, the Second Circuit specifically rejected the City's argument that the lower court should have reduced the requested lodestar amount by a certain percentage to reflect Lunday's "very limited success" at trial:

> There is a "strong presumption" that the lodestar amount represents a reasonable fee under Section 1988.... So long as the plaintiff's unsuccessful claims are not "wholly unrelated" to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount.... While the degree of plaintiff's success is the "most critical factor" in determining the reasonableness of a fee award ... we consistently have resisted a strict proportionality requirement in civil rights cases.... Moreover, the determination of whether such a lodestar adjustment need be made is left largely to the discretion of the trial court....

> While it is true that Lunday did not prevail on all of his claims against all defendants, Lunday was awarded $35,000 in compensatory and punitive damages against defendant Sutton. The City concedes that all of Lunday's claims arose from a common core of facts. Therefore, the court was not required to adjust the lodestar amount to reflect the failure to succeed across the board.

> The magistrate judge found that Lunday's recovery was a "substantial success" in a suit of this type, and we cannot say that the finding was an abuse of discretion. While the amount awarded in damages fell short of the $7,130,000 Lunday demanded, the relief transcended the mere "technical victory" that the Court in Farrar ruled merited no award of fees....

*Lunday,* 42 F.3d at 134–35 (citations omitted). The Second Circuit's reasoning in *Lunday* is directly applicable to the instant case. We find that plaintiff's success in the case at hand transcended the mere "technical victory" that the Supreme Court in *Farrar* ruled merited no award of fees.

III. Pro Bono Reduction

Finally, defendants urge this court to adopt a 5% "pro bono" reduction in order to avoid the reality or the appearance of awarding windfall fees. We doubt that the attorney's fees awarded by this court would create either the reality or the appearance of a "windfall." As discussed above, the time expended and hourly rate charged were reasonable, with the minor adjustments noted. We decline to adopt defendants' theory of a 5% "pro bono" reduction. Such an automatic adjustment would run counter to the legislative intent underlying section 1988, which is to stimulate enforcement of the civil rights laws by entitling those who vindicate their own civil rights to reimbursement for their legal expenses, and for law firms to accept such assignments.

### CONCLUSION

For the foregoing reasons, we conclude that plaintiff is entitled to $35,313.25 in attorney's fees and costs, including $539.25 in disbursements.

SO ORDERED.