INDEPENDENT LIVING AIDS, INC.,
and Marvin Sandler, Plaintiffs,

v.

MAXI–AIDS, INC., Harold Zaretsky, Mitchel Zaretsky, Elliot Zaretsky and Pamela Zaretsky Stein, Defendants.

No. 95 CV 656(ADS).

United States District Court,
E.D. New York.

Oct. 28, 1998.

The Dweck Law Firm, LLP, New York, NY, for Plaintiffs; Jack S. Dweck, Richard A. Hubell, of counsel.

Ruskin, Moscou, Evans & Faltischek, P.C., Mineola, NY, for Defendants; Melvin Ruskin, Mark S. Mulholland, John Demaro, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The facts underlying this case are set forth in the Court's earlier decisions and the trial transcript, and will not be repeated here. Presently before the Court is the renewed motion for attorneys' fees by the plaintiffs, Marvin Sandler and Independent Living Aids (collectively the "plaintiffs" or "ILA").

## I. BACKGROUND

The plaintiffs previously moved for attorneys' fees in the amount of $399,467.50, plus interest, as the prevailing party following a jury trial on their trademark (15 U.S.C. §§ 1117[a] and [b]), copyright (17 U.S.C. § 505) and New York General Business Law ("GBL") (GBL §§ 349 and 350) claims. The remaining defendants, Maxi–Aids, Inc., Mitchel Zaretsky, Elliot Zaretsky and Pamela Zaretsky Stein (collectively, the "defendants" or "Maxi–Aids") opposed this motion. In a decision dated July 25, 1998, the Court found it impossible to adequately determine the amount of attorneys' fees to be awarded, if any. The Court emphasized three deficiencies in the earlier fee request. First, the attorneys' time sheets did not indicate which hours were devoted to unsuccessful claims and actions, including: (1) a federal trade dress claim regarding their "Slimline Lo–Vision watches"; (2) federal trademark/service-mark claims regarding the terms "Independent Living," "ILA," "Do More Products," "Maxi–Aids and Appliances for Independent Living" and "Maxi–Aids Products for Independent Living"; and (3) a state law claim for intentional interference with economic benefits relating to bidding procedures. For this reason, the Court afforded the plaintiffs' counsel a "final" opportunity to review their records and determine the number of hours spent on the successful claims and actions. The Court advised the plaintiffs that in the event they are unable to do so, the Court intended to "substantially" reduce the fee application, to reflect that the claims on which the plaintiffs lost and their defense of the libel counterclaim were a major part of their theory of this case.

Second, the Court directed the plaintiffs' attorneys to recalculate their fee request, by reducing their hourly rates for a partner, Jack S. Dweck, and an associate, Richard A. Hubell from $350.00 and $175.00 an hour, to $225 and $135 per hour, respectively.

Third, the Court directed counsel to delete those portions of the request related to subjects which, on their face, had no relation to this case. Such extraneous matters included ILA's subsequently filed RICO lawsuit against the defendants and "estate planning" for the plaintiff Sandler.

Following this decision, the plaintiffs submitted a supplemental motion, allegedly in compliance with the Court's instructions concerning the elimination of certain fees. The following is the revised fee request (in hold), as compared to the initial request (*in italics*):

| Attorney | Original Hours | Revised Hours | Original Rate | Revised Rate | Original Total | Revised Total |
| --- | --- | --- | --- | --- | --- | --- |
| J. Dweck | *721.3* | **735.45** | *$325* | **$225** | *$234,422.50* | **$165,476.25** |
| R. Hubell | *1,098.1* | **1,066.9** | *$175* | **$135** | *$164,715.00* | **$144,031.50** |
| H.P. Dweck | *.7* | **8** | *$135* | **$135** | *$105* | **$1080.00** |

| | | | | | | |
|---|---|---|---|---|---|---|
| Paralegal | 4.5 | 0 | $50 | N/A | $225 | $0 |
| **TOTAL** | 1824.6 | 1810.35 | —— | —— | $399,467.50 | $310,587.75 |

## II. THE PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

As noted previously, the plaintiffs prevailed at trial on four causes of action: (1) a federal copyright infringement claim based on Maxi–Aids' "willfully" infringing ILA's copyrights in its 1985 through 1995 catalogs by copying original product listings; (2) a federal trademark/service-mark claim arising from Maxi–Aids' use of the "ILA logo" in its advertising, catalog and sales program, in a manner likely to cause confusion as to the source, (3) a claim arising under GBL § 349 for willful deceptive acts and practices with regard to the defendants' advertising and sale of products; and (4) willful false advertising in violation of GBL § 350. Given that the Court's prior opinion did not address whether the plaintiffs are entitled to attorneys' fees as a prevailing party on these causes of action, it now does so.

### A. Attorneys' Fees and Costs: The Standards

#### 1. *The Lanham Act*

The plaintiffs prevailed on a single Lanham Act cause of action, arising from Maxi–Aids' use of the "ILA logo" in its advertising, catalog and sales program, in a manner likely to cause confusion as to the source. At issue is whether the plaintiffs are entitled to recover counsels' fees for this claim.

■ The Lanham Act authorizes the award of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "Exceptional circumstances" exist only where there is evidence of fraud or bad faith. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir.1996); *Aztar Corp. v. N.Y. Entertainment, LLC*, 15 F.Supp.2d 252, 261 (E.D.N.Y. 1998). A finding of "exceptional circumstances" warranting an award of attorneys' fees falls "well within the district court's discretion, and absent evidence of its abuse," will not be disturbed on review. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d at 194 (citing *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 [2d Cir. 1988], *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 [1989] ).

■ This Court, in its exercise of discretion, finds evidence of bad faith on the part of Maxi–Aids, warranting the award of attorneys' fees under the Lanham Act. As set forth in the Court's earlier opinion and the trial transcript, the plaintiffs introduced evidence of at least five violations in each of the five consecutive Maxi–Aids catalogs from 1986 through 1989, by using ILA watches in its advertisements (Plaintiff's Exhibits 9B–9F). Significantly, the defendant Elliot Zaretsky admitted that he advertised, marketed and sold the watches bearing the ILA logo through 1990 (E. Zaretsky: Tr. 2111–17, 2159–63). From this and other proof, the Court finds that the defendants' Lanham Act violations were willful and in bad faith; for these reasons, the Court, in its exercise of discretion, finds that "exceptional circumstances" are present, rendering an award of attorneys' fees appropriate.

#### 2. *The Copyright Act*

The plaintiffs also seek counsels' fees associated with their federal copyright infringement claim. This claim was premised on Maxi–Aids "willfully" infringing ILA's copyrights of its 1985 through 1995 catalogs by copying original product listings.

■ The Copyright Act provides that "the court *in its discretion* may allow the recovery of full costs by or against any party .... [and] *may also award a reasonable attorney's fee* to the prevailing party as part of the costs." 17 U.S.C. § 505 (emphasis added). "Attorney's fees are not to be awarded automatically to a prevailing party ... but 'only as a matter of the court's discretion.' " *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1011 (2d Cir.1995)(quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 [1994] ). However, § 412 limits the district court's discretion to

award either attorneys' fees or costs where "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, *unless such registration is made within three months after the first publication* of the work." 17 U.S.C. § 412(2) (emphasis added); *see also Singh v. Famous Overseas, Inc.*, 680 F.Supp. 533, 536 (S.D.N.Y.1988). A district court's award of attorneys' fees and costs will be reversed on appeal only where the court applied the wrong legal standard or abused its discretion. *Knitwaves,* 71 F.3d at 1012; *Twin Peaks Productions, Inc. v. Publications International, Ltd.,* 996 F.2d 1366 (2d Cir.1993).

The defendants argue that ILA is not entitled to attorneys' fees that might otherwise be awarded to a successful litigant because of the 17 copyright certificates for ILA's catalogs, 15 were not registered within the three-month grace period provided in Section 412(2). The defendants point out that these 17 certificates of registration often were published more than a year before their registration, well beyond the 3–month "grace period" provided in Section 412.

As far as the Court is able to discern, the plaintiffs papers do not directly address this issue. In fact, they do not cite any cases supporting their request for attorneys' fees on the copyright claim. Instead, they state, in conclusory fashion, that they prevailed and are entitled as of right to attorneys' fees under the Copyright Act. The Court disagrees. As stated above, "attorney's fees are not to be awarded automatically to a prevailing party ... but 'only as a matter of the court's discretion.'" *Knitwaves, Inc. v. Lollytogs, Ltd.,* 71 F.3d at 1011. Also, 17 U.S.C. § 412 precludes an award of attorneys' fees where the registration was accomplished more than 3 months after publication. 17 U.S.C. § 412(2). This precludes ILA from obtaining attorneys' fees for its counsels' work on 15 of 17 infringing acts subsumed in their claim. Under similar circumstances, in *Knitwaves, Inc.,* 71 F.3d 996, the Second Circuit discussed a fee application by Knitwaves, which was entitled to fees on some, but not all, of its copyright claims. There, the Court held that because § 412(2) pre-

cluded Knitwaves from obtaining attorney's fees relating to its "Leaf Sweater" infringement claim, but not its other infringement claims, the case should be remanded so that the district court could "determine what percentage of work by [Knitwaves'] counsel was devoted to the Leaf Sweater infringement claim, and reduce its award by that percentage." *Id.* 71 F.3d at 1012.

■ Similarly, the Court finds—and the plaintiffs implicitly concede by not fully responding to the issue—that, pursuant to 17 U.S.C. § 412(2), ILA is not be entitled to attorneys' fees on 15 of the 17 catalogs at issue, because they were registered more than 3 months after first publication.

In the Court's opinion, however, ILA is deserving of counsels' fees with respect to the two catalogs at issue which were published within the three-month grace period. In exercising its discretion in this regard, the Court is persuaded by the evidence at trial, which demonstrated that the defendants engaged in willful, wholesale copying of ILA's catalogs for approximately a decade.

For the foregoing reasons, and as discussed more fully below, the plaintiffs shall be awarded attorneys' fees associated with their Copyright claim, albeit substantially reduced to reflect that 15 of the 17 copyrights at issue were registered more than 3 months after their catalogs were published.

### 3. The New York State Law Claims: GBL §§ 349 and 350

■ The remaining two claims which the plaintiffs prevailed on, and are at issue in the fee request, are the GBL § 349 and § 350 claims. Unlike the Lanham Act and Copyright Act claims, the defendants do not dispute that the prevailing plaintiffs are entitled to attorneys' fees under GBL §§ 349 and 350. In any event, the Court finds that an award is justified by the applicable statutes. Pursuant to GBL § 349(h) and § 350–e, a "court may award reasonable attorney's fees to a prevailing plaintiff." The awarding of fees under these sections remains in the sole discretion of the court. *See, e.g., Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.,* 120 Misc.2d 848, 467

N.Y.S.2d 471 (1983). A decision in this regard should take into the factors ordinarily considered by New York courts when evaluating requests for attorneys' fees, including the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved. *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 54 (2d Cir.1992)(citing New York State cases).

■ As elaborated on below, the Court awards ILA attorneys' fees as the prevailing party on the GBL §§ 349 and 350 claims, taking into account the above factors. In awarding fees, the Court also considers that the purpose of these statutes, as described in the Practice Commentaries, was to combat "fraud against consumers, particularly the disadvantaged." (Givens, *Practice Commentaries*, McKinney's Cons.Laws of N.Y., Book 19, General Business Law § 349, at 574–575). As noted in the Court's earlier decision,

> It is clear and unrefuted that the customers at issue are among the most vulnerable in our society: the blind, the elderly, the physically disabled, and the infirm. In the Court's view, Maxi–Aids' false, misleading advertisements of products directed at this population constitutes "public interest" of the highest order.

Accordingly, the plaintiffs' motion for fees for counsels' work performed on the GBL claims is granted, with the amount of the award discussed below.

### B. Calculating the Fee Award

As set forth above, the Court concludes that the plaintiffs should be awarded attorneys' fees for their GBL §§ 349 and 350 claims, a small portion of their Copyright claim, and their Lanham Act claim. The Court now determines the amount of the award.

■ The most useful starting point for determining the amount of an attorneys' fees award for the federal claims is the "lodestar" method. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir.1994). That method

initially estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). As noted above, the Court previously determined the appropriate hourly rates to be $225 an hour for Dweck and $135 and hour for Hubell.

The product of reasonable hours times a reasonable rate does not end the inquiry. "There remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40. In considering an adjustment to the lodestar calculation in order to arrive at a "reasonable" amount of an award of attorney's fees, the district court may consider the twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974). *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

However, many of these factors are subsumed within the initial lodestar calculation. Thus, the novelty and complexity of the issues, the quality of representation, the special skill and experience of counsel, and the results obtained are factors fully reflected in the lodestar calculation and cannot serve as independent bases for adjusting the basic fee award. *See Delaware Valley Citizens' Coun-*

*cil,* 478 U.S. at 564–65, 106 S.Ct. at 3097–98; *United States Football League v. National Football League,* 887 F.2d at 415.

In a similar vein, as set forth above, the determination as to the appropriate fees on the GBL claims should include the factors ordinarily considered by New York courts when evaluating fee requests, such as: the time and skill required in litigating the case; the complexity of issues; the customary fee for the work; and the results achieved. *See Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d at 54 (citing New York State cases). Since many of these factors overlap with the lodestar considerations, they will be addressed together below.

## C. The Plaintiffs' Fee Request

■ The Court perceives several problems with the plaintiffs' fee request of $310,587.75, leading to the view that it must be "substantially reduced," as forewarned in the earlier decision. First among these problems is that the Court cannot discern which attorney hours were spent on unsuccessful claims and actions taken, which include: (1) a federal trade dress claim regarding their "Slimline Lo–Vision watches"; (2) federal trademark/service-mark claims regarding the terms "Independent Living," "ILA," "Do More Products," "Maxi–Aids and Appliances for Independent Living" and "Maxi–Aids Products for Independent Living"; and (3) a state law claim for intentional interference with economic benefits relating to bidding procedures; (4) an unsuccessful preliminary injunction motion. This problem stems from counsels' time sheets, which do not indicate the nature of the work performed. For example, the time sheets consist almost entirely of such vague entries as "Telephone conversation with client," "Meeting with client," "Preparation for trial" and "Research of the Law." Dweck states that "There has been a removal of all entries which relate to claims or proceedings on which the Plaintiff ILA did not prevail" (Letter of Jack Dweck dated August 3, 1998). Without in any way questioning the good-faith basis for Dweck's statement, there simply is no way to verify it. As emphasized in the Court's earlier opinion, "These records should specify, for each attor-

ney, the date, the hours expended, and *the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983)(emphasis added). The burden is on counsel to present records "*from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required." F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987)(applying New York State law and noting that the Second Circuit rule is similar to that of New York)(emphasis added). The failure to specify the nature of the work performed is especially troublesome here, where the Court's prior opinion alerted the attorneys to these concerns, and afforded them an opportunity to amend their request.

In addition, despite the Court's directive that ILA reduce the fee to delete attorney hours devoted to unsuccessful claims and actions, Dweck's total hours have *increased* by 14.5 hours from the prior fee request, and Hubell's total hours have decreased by a mere 31.2 hours. Had ILA recalculated the initial request based on the Court-imposed hourly rates without eliminating any hours, the fee would total $310,536.00—just a few dollars less than the $310,587.75 they now seek. A related problem with the supplemental fee request is that the Court has decided not to award fees for a substantial portion of attorney hours devoted to the Copyright claim. Also, upon further inspection of the time sheets, the Court finds it inappropriate to award fees for more than 100 attorney hours spent preparing for the second trial; this amount is excessive, in the Court's view, given that much of this preparation was duplicative of the preparation for the first trial, which ended in a mistrial.

For the foregoing reasons, the fee request must be reduced; the remaining question is by how much. "There is no precise rule or formula" for assessing reasonable attorneys' fees where, as here, the plaintiffs have achieved partial success, and in such circumstances the district court "may simply reduce the award to account for the limited success" without undertaking an hour-by-hour calculation. *Hensley v. Eckerhart,* 461 U.S. at 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In the

Court's view, the requested fee should be reduced by one half, from $310,587.75 to $155,293.88. This reduction takes into account the flaws in the fee request outlined above: that the Court cannot discern which attorney hours were devoted to unsuccessful claims and actions taken; that the plaintiffs did not prevail on a substantial number of their original claims; that the plaintiffs are not entitled to fees for the greater portion of their Copyright claim; and that a substantial number of hours are for duplicative trial preparation.

■ In the Court's opinion, the fee award of $155,293.88 reflects the lodestar and New York State law factors. This was a labor-intensive, time-consuming case for the plaintiffs' attorneys, and one which involved sophisticated, difficult issues of law. In the Court's view, the plaintiffs' attorneys possessed ample skill, and performed their legal services admirably. In addition, the Court credits Dweck's statement that he and his associate were precluded from accepting other cases while this matter was pending. The attorneys achieved a great deal of success by their efforts, as evidenced by the multi-million dollar jury award. In addition, the plaintiffs' attorneys and their law firm are held in high regard and enjoy an excellent reputation. In view of these considerations, an award of $155,293.88 is justified.

### III. THE PLAINTIFFS' MOTION FOR COSTS AND DISBURSEMENTS

In addition, the plaintiffs move for costs and out-of-pocket expenses in the amount of $32,412.91. The defendants, apparently, do not object to this amount.

Two of the statutory provisions at issue provide for the award of costs and disbursements to the prevailing party. Under 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs,"in addition to attorneys' fees, by a prevailing party in a Copyright action. Similarly, pursuant to 15 U.S.C. § 1117(a), when a trademark violation has been proven, "the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover ... the costs of the action." By contrast, GBL §§ 349 and 350 do not mention, and hence do not provide for, a recovery of costs.

■ Although the defendants apparently do not challenge the award of costs and disbursements, the Court is troubled by the plaintiffs' request. Chief among these concerns is that costs are not allowable under the GBL, which was the basis for two of their four successful claims. For this reason, the Court reduces the plaintiffs' request by one-half, and grants an award of $16,206.46 for costs and disbursements.

### IV. INTEREST

■ Finally, the plaintiffs make a brief, boilerplate pitch for "interest according to law." That "law" is unspecified, as is the rate. The plaintiffs offer no authority for awarding pre-judgment interest in this case; for that matter, they do not explain whether interest is sought with respect to the jury award, attorneys' fees, costs or all three. Given the tortious nature of the claims and the conclusory nature of the request, unsupported by any authority or request for a specified interest rate, the Court declines to award pre-verdict interest.

Nevertheless, the Court considers whether the plaintiffs are entitled to post-verdict, pre-judgment interest with respect to the jury award. With respect to the GBL claims, under CPLR § 5002, pre-judgment interest "shall be recovered upon the total sum awarded, including interest to verdict ... from the date the verdict was rendered ... to the date of entry of final judgment. The amount of interest shall be computed by the clerk of the court and included in the judgment." With regard to the trademark claim, although Section 1117(a) does not provide for prejudgment interest, such an award is "within the discretion of the trial court" and, like the award of attorneys' fees, is permissible in "exceptional" cases, such as here. *American Honda Motor Co., Inc. v. Two Wheel Corp.,* 918 F.2d 1060, 1064 (2d Cir. 1990). Somewhat more problematic is the issue of post-verdict, pre-judgment interest in under the Copyright Act. As one district judge in this Circuit observed:

"The law on pre-judgment interest in Copyright Act cases is unsettled in this circuit. In its most recent decision involving this issue, the Second Circuit upheld a district court's denial of pre-judgment interest, but in so doing explicitly declined to rule on the appropriateness of such awards: "[w]e need not address the question of whether prejudgment interest is appropriate in copyright infringement cases generally, because here the district court did not abuse its discretion in declining to make an award." *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 569 (2d Cir.1994). Factors considered by the Second Circuit in its review of the district court's exercise of discretion included the size of the award and the plaintiff's willingness vel non to prosecute the action expeditiously."

"In a subsequent district court case, the district judge, while acknowledging that the law on pre-judgment interest remained unsettled in the Second Circuit, interpreted In Design as allowing her the discretion to make such awards: 'The issue of the permissibility of pre-judgment interest under the current Copyright Act, which neither expressly allows nor prohibits such an award, is unresolved in the Second Circuit. . . . If such an award is permitted, the award of prejudgment interest is discretionary. . . .' *Softel, Inc. v. Dragon Medical and Scientific Communications, Ltd.*, 891 F.Supp. 935, 943–44 (S.D.N.Y.1995). While the *Softel* judge awarded prejudgment interest to the plaintiff, she limited the award to the actual damages portion of plaintiff's claim. The rationale for the award cited in this case was plaintiff's loss of the use of the funds it would have received had the infringement not taken place." *Id.* 891 F.Supp. at 944.

"While the Second Circuit standards pertaining to awards of pre-judgment interest in copyright cases remain unclear, one point seems firmly established: awards of pre-judgment interest are discretionary."

*Antenna Television, A.E. v. Aegean Video Inc.*, No. 95–CV–2328, 1996 WL 298252, *14 (E.D.N.Y. April 23, 1996).

█ For the same reason that underlying the award of attorneys' fees, the Court in its exercise of discretion awards the plaintiffs post-verdict, pre-judgment interest on the Copyright claim, in addition to the GBL and Trademark claims. Accordingly, the plaintiffs are hereby awarded post-verdict, pre-judgement interest, to be computed by the Clerk of the Court.

## V. CONCLUSION

Having reviewed the parties' submissions, and for the reasons stated above, it is hereby:

**ORDERED,** that the plaintiffs' motion for attorneys' fees is granted, to the extent the Court awards a total attorneys' fee in the amount of $155,293.88; and it is further

**ORDERED,** that the plaintiffs' motion for costs and disbursements in granted, to the extent that the Court awards costs in the total amount of $16,206.46; and it is further

**ORDERED,** that the plaintiffs' request for "interest" is granted, to the extent that the plaintiffs are hereby awarded post-verdict, pre-judgement interest, to be computed by the Clerk of the Court; and it is further

**ORDERED,** that the Clerk of the Court is directed to enter judgment in favor of the plaintiffs in the following sums: a jury award in the amount of $2,400,000.06 plus post-verdict, pre-judgment interest; costs in the amount of $16,206.46; and attorneys' fees in the amount of $155,293.88; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**