OPINION OF THE COURT
Charles Edward Ramos, J.
Plaintiffs Barry Diller and USA Networks, Inc. (USAi) *276 request a permanent injunction and award of attorneys' fees and costs after obtaining a default judgment against defendants, Eric M. Steurken, Rich A. Preisig, Jr., Thoughts, and Cybermultimedia, Inc.[1]
Background[2]
Barry Diller is the chairman and chief executive officer of USAi, a diversified media and e-commerce company. On January 19, 1999, defendants Steurken and Preisig, using “Thoughts,” an assumed business name, registered the Internet domain name “barrydiller.com.” They then registered their own domain, “cybermultimedia.com,” using another assumed business name, “Cybermultimedia, Inc.” (CMM), and started designing a web site. On January 27, defendants incorporated CMM and began to publicize their web site one month later.
Defendants essentially established cybermultimedia.com as a domain name brokerage site. They would collect the names of celebrities, register their names as Internet domains, and then attempt to sell them to the celebrities at a substantial profit. From June 1, 1999 until June 22, CMM’s site contained numerous uses of Barry Diller’s name, one use of his picture, and one use of the name “USA Networks.”[3] Defendants never asked Diller for permission to use his name, his picture, or the name “USA Networks” in any manner on the CMM web site. On June 10, plaintiffs wrote a letter to defendants demanding removal from the CMM web site of all references to Barry Diller and USAi. Plaintiffs also demanded, inter alia, that defendants transfer “barrydiller.com” to their control. In response to this letter, on June 22, defendants removed Diller’s picture and the reference to USAi from the site. However, they did not remove Diller’s name and continued to offer the sale of “barrydiller.com” for $10,000,000.
*277 Plaintiffs immediately filed suit against defendants alleging violation of Barry Diller’s civil rights under section 51 of the Civil Rights Law, trademark infringement under section 360-k of the General Business Law, and unfair trade practice and unfair competition under sections 349 and 350 of the General Business Law. In mid-July of 1999, defendants removed all references to Diller’s name from their site and discontinued offering “barrydiller.com” for sale. However, they did not transfer “barrydiller.com” to the plaintiffs. Consequently, plaintiffs did not withdraw their suit and obtained a default judgment on November 15, 1999. Plaintiffs now ask the court to enjoin defendants from using “barrydiller.com” and to order a transfer of ownership of the domain name. Plaintiffs also request attorneys’ fees and disbursements as damages in the amount of $68,615.20 and costs in the amount of $200. Plaintiffs do not claim any other damages.
Entitlement to Injunction
On the issue of injunctive relief, defendants have conceded liability for violation of section 51 of the Civil Rights Law and sections 349, 350 and 360-k of the General Business Law by defaulting (see, Conteh v Hand, 234 AD2d 96 [1st Dept 1996] [stating “(i)t is well settled that by defaulting a defendant admits all traversable allegations in the complaint, including the basic allegation of liability”]). Section 51 of the Civil Rights Law provides: “Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without * * * written consent * * * may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof ” (emphasis added). Similarly, General Business Law § 349 (h), which applies to deceptive trade practices, provides that “any person who has been injured by reason of any violation of this section may bring an action * * * to enjoin such unlawful act or practice.” The language of General Business Law § 350-e (3), which applies to false advertising, is identical. Furthermore, General Business Law § 360-Z provides that “[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition.” Consequently, defendants are to be enjoined as a matter of law from using the domain name “barrydiller.com.”
In addition to provisions of State law providing plaintiffs with support for an injunction, the recently enacted Anticyber *278 squatting Consumer Protection Act (ACPA) (15 USC § 1051 et seq., added by Pub L 106-113, 113 US Stat 1501) provides for “injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff” (15 USC § 1129 [2] [emphasis added]). While the ACPA was not in effect when defendants registered “barrydiller.com” (see, 15 USC § 1129 [4]), the Second Circuit has ruled that the ACPA applies retroactively where prospective or injunctive relief is at issue (see, Sporty’s Farm v Sportsman’s Mkt., 202 F3d 489, 502 [2d Cir 2000]). Moreover, domain name transfer is a remedy of choice in anticybersquatting actions (see, Toys “R” Us v Abir, 1999 WL 61817, *1, 1999 US Dist LEXIS 1275, *2 [SD NY, Feb. 10, 1999, Koeltl, J.] [referring to previous order directing a domain name transfer]; Green Prods. Co. v Independence Corn By-Prods., 992 F Supp 1070, 1079-1080 [ND Iowa 1997] [ordering domain name transfer as part of a preliminary injunction]). Given the provisions of State law, supra, the Second Circuit’s construction of the ACPA, judicial recognition of domain name transfer as a recognized remedy in anticybersquatting actions, and the fact that defendants have indicated a willingness to consent to an injunction in their opposition papers, the court grants plaintiffs’ request for injunctive relief and compels defendants to transfer ownership of “barrydiller.com” to the plaintiffs.
Entitlement to Attorneys’ Fees and Costs
The general rule of law in New York is that attorneys’ fees are “merely incidents of litigation and thus are not compensable in the absence of statutory authority providing for such” (City of Buffalo v Clement Co., 28 NY2d 241, 262-263 [1971]). Plaintiffs rely upon General Business Law § 349 (h) and § 350-e (3) for their statutory authority. These sections provide for an award of reasonable attorneys’ fees at the discretion of the court (see also, Independent Living Aids v Maxi-Aids, Inc., 25 F Supp 2d 127, 131 [ED NY 1998] [noting that an award of attorneys’ fees is generally a matter of judicial discretion]).
However, plaintiffs’ reliance upon these statutes for an award of attorneys’ fees is misplaced. “The goals of GBL §§ 349-350 were major assaults upon fraud against consumers, particularly the disadvantaged * * * not adventitious intervention in commercial or trade identification cases brought by one business against another. This reality may properly guide their interpretation” (Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 574-575; see also, Genesco Entertainment v Koch, 593 F Supp *279 743, 752 [SD NY 1984] [noting that section 349 claims must concern the public interest]; Independent Living Aids v Maxi-Aids, Inc., supra, at 132 [applying the interpretation of the Practice Commentaries to section 350 as well]). Plaintiffs did not bring their suit as consumers but rather as defendants’ competitors alleging unfair trade practices and unfair competition as the basis of their General Business Law claim. Furthermore, “[a] prima facie case [under section 349] requires * * * a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof’ (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995] [emphasis added]). An improper act or practice on the part of a defendant does not in and of itself constitute a deceptive act or practice (see, Varela v Investors Ins. Holding Corp., 81 NY2d 958, 961). To be sure, the initial posting of “barrydiller.com” on the Internet constituted trademark dilution and infringement upon Barry Diller’s civil rights. However, plaintiffs have not proven to the court’s satisfaction that defendants engaged in significant deceptive or misleading practices through their offer of “barrydiller.com.” In contrast stand the corporate cases cited by the plaintiffs, Centaur Communications v A/S/M Communications (652 F Supp 1105, 1114-1115 [SD NY 1987], affd 830 F2d 1217 [2d Cir 1987]) and Vitabiotics Ltd. v Krupka (606 F Supp 779, 786 [ED NY 1984]), where the defendants engaged in deliberate and deceptive practices. In conclusion, although defendants’ default has established their general liability, the court will not award attorneys’ fees when plaintiffs have failed to establish that they are entitled to them as a matter of law.
In addition to their argument for attorneys’ fees under the General Business Law, plaintiffs argue that they are entitled to attorneys’ fees based upon Congress’ intent in passing the ACPA. Plaintiffs do not argue that the ACPA is directly applicable since the act limits its applicability to “domain names registered on or after November 29, 1999” (15 USC § 1129 [4]). While plaintiffs correctly observe that the plain language of the ACPA provides for remedies of costs and attorneys’ fees (see, 15 USC § 1129 [2]), they incorrectly assert that Congress would condone a State court’s use of the remedies provision of the ACPA as a rationale for awarding attorneys’ fees in this case. Congress provided that “damages under subsection (a) or (d) of section 35 of the Trademark Act of 1946 (15 U.S.C. 1117) * * * shall not be available with re *280 spect to the registration, trafficking, or use of a domain name that occurs before the date of the enactment of this Act [Nov. 29, 1999]” (Pub L 106-113, Div B, § 1000 [a] [9], 113 US Stat 1536, reprinted following 15 USCA § 1117). Subdivision (a) of 15 USC § 1117 provides for, inter alia, an award of attorneys’ fees as damages. Since Congress explicitly excluded from retroactive effect awards of attorneys’ fees under the ACPA, plaintiffs cannot claim that Congress intended for a State court to use the ACPA as persuasive authority for awarding attorneys’ fees in a pre-ACPA case (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 76 [“Where words of a statute * * * express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation”]). Therefore, plaintiffs may only use New York law to advance their case for attorneys’ fees. Since plaintiffs fail to demonstrate that they are entitled to attorneys’ fees under the New York General Business Law, the court denies any such award to plaintiffs.
The court next turns its attention to the issue of costs and disbursements. Having received no argument from defendants as to why the court should not grant plaintiffs costs in the amount of $200 under CPLR 8201, the court grants this request. However, the plaintiffs are not entitled to any further sum for disbursements or out-of-pocket expenses. “GBL §§ 349 and 350 do not mention, and hence do not provide for, a recovery of costs” (Independent Living Aids v Maxi-Aids, Inc., supra, at 134). Finally, defendants contend that any attorneys’ fees or costs that the court would impose would be appropriate only against CMM because only CMM listed “barrydiller.com” for sale on its site. The court finds this contention void of merit. Defendants had a fair opportunity to litigate the issue of liability and chose to default instead of mounting a defense. Consequently, the court finds all defendants liable.
Accordingly, it is ordered that defendants, their agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in áctive concert or participation with defendants are hereby permanently enjoined and restrained:
1. From retaining ownership of or using the name “barrydiller.com” or any form of the name Barry Diller, any colorable imitation of the name, or any thing, symbol or name confusingly similar thereto or likely to cause injury to Barry Diller and USAi’s business reputation;
2. From using any form of the trademarks of plaintiff USA Networks, Inc., any colorable imitation of those marks, or any *281 thing, symbol or name confusingly similar thereto or likely to cause injury to Barry Diller and USAi’s business reputation;
3. From representing by any means whatsoever, directly or indirectly, that defendants, any products or services offered by defendants, including information services on the Internet, are associated in any way with Barry Diller and USAi or their products or services, and from otherwise taking any other action likely to cause confusion, mistake, or deception on the part of purchasers or consumers;
4. From doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers into the belief that defendants’ products or services come from or are the products or services of Barry Diller or USAi, or are somehow sponsored or underwritten by, or affiliated with, Barry Diller or USAi, and from otherwise unfairly competing with Barry Diller or USAi; ordered that defendants shall transfer ownership of the domain name “harrydiller.com” to Barry Diller by July 20, 2000, and it is further ordered that the clerk shall enter judgment against defendants for costs in the amount of $200.

. Plaintiffs never effected service on defendant Thomas E. Kaplan and request that no relief be awarded against him. Thus, the court omits him from the effects of this order.

. The court assumes that the tremendous popularity of the Internet and e-commerce has made such terms as “domain name,” “web site,” “world wide web,” and other basic Internet terms general public knowledge. See Brookfield, Communications v West Coast Entertainment Corp. (174 F3d 1036, 1044, 1045 [9th Cir 1999]), Reno v American Civ. Liberties Union (521 US 844, 849-853 [1997]), and MTV Networks v Curry (867 F Supp 202, 204, n 2 [SD NY 1994]) for an introduction to Internet terminology.

. Plaintiffs claim that Diller’s name and picture were on the CMM site since March 1, 1999. However, they do not produce any evidence to support this claim.