### Paul KNOEFFLER, Plaintiff,

v.

### TOWN OF MAMAKATING, Duane Roe, Supervisor Town of Mamakating, sued in his individual capacity, Zoning Board of Appeals, and John Grifo, Building Inspector, sued in his individual capacity, Defendants.

### No. 98 CIV. 6683 WCC.

United States District Court, S.D. New York.

Dec. 12, 2000.

Law Offices of Michael H. Sussman, Goshen, NY (Stephen Bergstein, of Counsel), for Plaintiff.

Law Office of Marvin Newberg, Monticello, NY (Marvin Newberg, of Counsel), for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Paul Knoeffler moves for reasonable attorneys' fees and costs against defendant Town of Mamakating (the "Town") in the amount of $35,785.12 pursuant to 42 U.S.C. § 1988. On March 15, 2000, this Court granted in part plaintiff's summary judgment motion declaring that Chapter 44 of the Mamakating Town Code (the "Code") and both the original and amended versions of § 199-45 of the Code were unconstitutional. See Knoeffler v. Town of Mamakating, 87 F.Supp.2d 322 (S.D.N.Y. 2000). Plaintiff was also granted permission to seek damages pursuant to 42 U.S.C. § 1983. See id. For the reasons

stated hereinafter, plaintiff is awarded fees and expenses totaling $33,347.62.

### DISCUSSION

#### I. Section 1988

█ In a § 1983 case, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Supreme Court has stated that the prevailing party should recover attorneys' fees "unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citations omitted). Because no circumstances exist that would render an award of attorneys' fees unjust, this Court must now pursue a two-step analysis. The initial inquiry concerns whether the plaintiff is a prevailing party under the statute. After crossing the 'statutory threshold' the Court must then determine whether the fee is 'reasonable.' Lilly v. County of Orange, 910 F.Supp. 945, 949 (S.D.N.Y. 1996) (Conner, J.) (quoting Hensley, 461 U.S. at 433, 103 S.Ct. 1933); see also Hensley, 461 U.S. at 434, 103 S.Ct. 1933 (holding that the hours not billed to a client cannot be billed to an adversary).

#### A. Prevailing Party

█ A party is considered "prevailing," if he "obtains at least some relief on the merits." Farrar v. Hobby, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citations omitted). "A party need not succeed on every issue raised by him, nor even the most crucial one." LaRouche v. Kezer, 20 F.3d 68, 71 (1994) (citing Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); Hanrahan v. Hampton, 446 U.S. 754, 757–58, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam)). The party merely has to prevail on a "significant claim." LaRouche, 20 F.3d at 71 (citing Garland, 489 U.S. at 791–92, 109 S.Ct. 1486; Hanrahan, 446 U.S. at 757, 100 S.Ct. 1987). The focus of

the inquiry rests upon the "material alteration of the legal relationship of the parties." *Farrar,* 506 U.S. at 111, 113 S.Ct. 566 (quoting *Garland,* 489 U.S. at 792–93, 109 S.Ct. 1486). Therefore, a party does not even have to receive actual damages, but may be considered prevailing if he gains relief through a consent decree or settlement. *See LaRouche,* 20 F.3d at 71 (citing *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)).

In this case, plaintiff is clearly a prevailing party. On March 15, 2000, this Court declared that Chapter 44 of the Code and both the original and amended versions of § 199–45 of the Code were unconstitutional. *See Knoeffler,* 87 F.Supp.2d at 322. At a damages hearing, held on July 5, 2000, plaintiff was awarded $4,308 in damages for costs and emotional distress. The relationship between the parties was materially altered.

## B. *Reasonable Fee*

▮ In determining reasonable attorneys' fees, the district court must consider the "lodestar figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir.1997) (citing *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1159 (2d Cir.1994)); *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1140 (2d Cir.1983). The lodestar figure provides an objective basis by which to estimate the fees. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. "The party seeking the award must submit evidence supporting his claim of hours worked and rates charged." *Id.* However, the district court has broad discretion in determining the amount of attorneys' fees awarded to the prevailing party. *See id.* at 437, 103 S.Ct. 1933; *Luciano,* 109 F.3d at 115.

## 1. *Reasonable Hourly Rates*

▮ A reasonable hourly rate is one "in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

### a. *Michael Sussman*

▮ Michael Sussman, a seasoned attorney with 22 years of experience litigating Federal Civil Rights cases for the U.S. Department of Justice, the NAACP and in private practice (Sussman Affm. ¶ 4) seeks payment for 18.5 hours at a rate of $325 per hour, for a total of $6,012.50. He has argued over 100 cases in the U.S. Courts of Appeals, conducted more than sixty civil rights trials and won awards for outstanding service during his tenure at the U.S. Department of Justice. (*Id.* ¶ 5).

▮ Sussman admits that he currently charges his clients $300 per hour (Pl. Mem. Supp. Atty. Fees at 5), but requests the Court to increase the same to $325. Although the Court is not bound by the rate the attorney charges his clients, but may look at the complexity of the legal issues and other relevant factors, we do not find any reason to raise Sussman's rates by $25.

Courts have consistently found that $300 for a lead attorney is well within reason. *See Versace v. Versace,* No. 98 Civ. 0123, 2000 WL 739569, at *3 (S.D.N.Y. June 8, 2000) (noting that rates of $300 and $340 per hour are within the range of reasonable attorneys' fees in New York) (citing *Maddalone v. United Brotherhood of Carpenters,* No. 95 Civ. 2112, 1999 WL 269913, at *1 (S.D.N.Y. May 4, 1999)); *see also Ginsberg v. Valhalla Anesthesia Assocs., P.C.,* No. 96 Civ. 6462, 1998 WL 19997, at *3 (E.D.N.Y. Jan.20, 1998) (stating that lead attorneys receive in the range from $250 to $350; finding that $300 was reasonable). Furthermore, the Court finds that Sussman did not play a significant

role in the case. A major portion of the 18.5 hours expended by him were spent editing and reviewing Bergstein's work. The fact that plaintiff received excellent results in the underlying civil action does not warrant an increase in Sussman's fees; at most, it warrants an increase in Berg-stein's. Therefore, Sussman shall receive an hourly rate of $300, for 18.5 hours, for a total of $5,550.

### b. *Stephen Bergstein*

Stephen Bergstein, a seventh-year associate, requests payment for 147.9 hours of work, at a rate of $200 per hour, totaling $29,580.[1] As a senior associate, Bergstein submits that over the past seven years, he has: practiced civil rights litigation; either briefed or argued over 100 cases in both the state and federal courts; and drafted petitions and amicus briefs that have been submitted to the United States Supreme Court. (Bergstein Affm. ¶ 13.)

 In order to establish the reasonable hourly rates of associates, the party seeking the award may provide the court with affidavits from similarly situated attorneys. *See Cruz,* 34 F.3d at 1160. In this case, Bergstein submits the affirmation of Ambrose W. Wotorson in support of his requested rate of $200 per hour. (Bergstein Affm., Ex. B.) Wotorson, a graduate from the University of Miami School of Law in 1992, was an Assistant District Attorney in Brooklyn for three years before commencing employment at the Law Offices of Michael Sussman in 1995. In 1997, after working at the Sussman firm, he resigned to start his own practice in New York City. In 1998, he was awarded $200 per hour by Judge Brieant after prevailing in a racial discrimination suit. *See Agonafer v. Rubin,* 35 F.Supp.2d 300 (S.D.N.Y.1998).

 Although this Court does not find Bergstein and Wotorson to be similarly situated because the latter owns his own law practice, we do find that $200 per hour is a reasonable hourly rate for a civil rights attorney with seven years experience. *See Marisol A. ex rel Forbes v. Giuliani,* 111 F.Supp.2d 381, 386 (S.D.N.Y. 2000) (finding that $230–$250 per hour is a reasonable rate for attorneys with seven to nine years experience); *Sowemimo v. D.A.O.R. Sec., Inc.,* No. 97 Civ. 1083, 2000 WL 890229, at *3 (S.D.N.Y. June 30, 2000) (awarding $200 per hour to a "moderately experienced civil rights lawyer"); *Williams v. New York City Hous. Auth.,* 975 F.Supp. 317, 323 (S.D.N.Y.1997) (awarding $200 per hour to senior associates) (citing *Ciner Mfg. Co. v. S.M. Gold Fashion Mfg. Corp.,* No. 94 Civ. 3831, 1997 WL 193330, at *3 (S.D.N.Y. Apr.21, 1997) (awarding $190 per hour pursuant to 17 U.S.C. § 505)); *Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite,* 970 F.Supp. 348, 350 (S.D.N.Y.1997); *Bridges v. Eastman Kodak Co.,* No. 91 Civ. 7985, 1996 WL 47304, at *11–12 (S.D.N.Y. Feb. 6, 1996) (awarding $200 per hour to seventh year associate); *Helbrans v. Coombe,* 890 F.Supp. 227, 234 (S.D.N.Y. 1995) (awarding $225 per hour for senior associates); *Loper v. New York City Police Dep't,* 853 F.Supp. 716, 720 (S.D.N.Y. 1994) (awarding $250 per hour to a seventh year associate); *see also Fernandez v. North Shore Orthopedic Surgery & Sports Med.,* No. Civ. A CIV 96–4489, 2000 WL 130637, at *2 (E.D.N.Y. Feb.4, 2000) ("The hourly rates awarded by courts in [the Eastern District of New York] during the past few years have ranged from $200 to $225 for partners and from $100 for junior associates to $200 for senior associates.") (citations omitted). Defendant argues that Bergstein should be allowed only $175 per hour and relies on the fact that for approx-

---

1. Initially, Bergstein sought payment for the 139.60 hours worked, but thereafter requested an additional 9.95 hours for the time expended on the reply memorandum of law. However, he did recognize 1.65 hours spent traveling and drafting a press release was either excessive or unnecessary towards the litigation. (Pl. Reply Mem. Supp. Atty. Fees at 8, 10.) In sum, Bergstein requests payment for 139.60 + 9.95—1.67 = 147.9 hours.

imately 1996 to 1999, that amount was awarded to Bergstein in his § 1988 fee applications. (Bergstein Affm. ¶ 11.) However, defendant fails to acknowledge that in January 2000, Magistrate Judge Yanthis awarded fees to Bergstein of $190. *See Stern v. Michelangelo Apts., Inc.,* No. 97 Civ. 9532, at 8 (S.D.N.Y.2000). In *Stern,* the fee application was made in July 1999, one year prior to the date in which the fee application was made in this case; Bergstein was a sixth-year associate. (Bergstein Affm. ¶ 11.) It is reasonable for seventh-year associates to receive $10 per hour more than sixth-year associates to reflect the legal expertise gained by them over a year. Accordingly, Bergstein will receive $200 per hour.

#### i. *Office Location*

 The relevant community for a fee determination is the judicial district in which the court sits, namely, the Southern District of New York. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 231–32 (2d Cir.1987); *Williams,* 975 F.Supp. at 322. Defendant argues that Sussman and Bergstein are citing New York City rates which should not be granted because their office is located in Orange County where the cost of doing business is significantly cheaper. However, New York City rates have dictated the amount of attorneys' fees in the Southern District of New York, irrespective of the actual office location. *See Stewart v. Barclay's Bus. Credit, Inc.,* 860 F.Supp. 150, 150 (S.D.N.Y.1994) ("[O]ur Court has traditionally applied the hourly rates of New York City practitioners in these matters, recognizing that the relevant community served is the entire Southern District of New York, and if a lawyer chooses to live and work within that district in a more salubrious place, or a cheaper one, that is his or her own personal choice.") (citation omitted), *aff'd,* 54 F.3d 766 (2d Cir.1995); *Loper,* 853 F.Supp. at 719 (awarding fees to a New Jersey based firm according to the New York City market rates). In any event, this Court has reviewed the back-

ground of Sussman and Bergstein and the complexity of the issues in this case and finds that the rates of $300 and $200 per hour, respectively, are reasonable in view of their experience. *See, e.g., Ward v. New York City Hous. Auth.,* No. 97 Civ. 8550, 1999 WL 446025, *9–11 (S.D.N.Y. June 28, 1999) (awarding Sussman $300 per hour and Bergstein $175 per hour without reference to office location).

#### 2. *Reasonable Amount of Time Spent*

Defendant attacks the reasonableness of the hours expended by plaintiff's counsel on several grounds: (1) excessiveness in comparison to defense counsel's time; (2) fee padding; (3) failure to settle; and (4) unreasonableness of time expended for specific tasks. Before addressing these arguments, the Court will first consider whether counsel will be awarded the fully hourly rate for travel time.

#### a. *Travel Time*

 Bergstein requests his full hourly rate for the time spent traveling to court, 15.25 hours, and his adversary's office, 1.5 hours, even though he has been denied full reimbursement for such travel in the past. *See, e.g., Ward,* 1999 WL 446025, at *10. Bergstein argues that he should receive his full hourly rate because his clients are not charged a reduced rate for travel. He relies upon Judge Easterbrook who stated that: "[t]ravel time is an opportunity cost; while traveling, counsel cannot work on something else." *Bohen v. City of E. Chicago,* 666 F.Supp. 154, 157 (N.D.Ind.1987), *rev'd for other reasons,* 799 F.2d 1180 (7th Cir.1986); *New York State Nat'l Org. for Women v. Cuomo,* No. 3 Civ. 7146, 1996 WL 689404, at *2 (S.D.N.Y. Nov.26, 1996) (stating that reduction of fees for travel time is within the court's discretion, but such reduction is not mandatory when the time was de minimis, thereby precluding the attorney from working on other cases) (citing inter alia, *Johnson v. Kay,* 742 F.Supp. 822, 837 (S.D.N.Y.1990); *Carrero*

*v. New York City Hous. Auth.*, 685 F.Supp. 904, 909 (S.D.N.Y.1988), *aff'd in relevant part*, 890 F.2d 569, 582 (2d Cir. 1989)). Defendant concedes that plaintiff's counsel should be paid in full for the time traveling to and from court, totaling $3,050, and merely argues that plaintiff's counsel "should be required to categorically state that they did no other work, by telephone, during those times when they were traveling to and from Court in this action before they are fully paid for the same." (Newberg Affm. ¶ 12.) Bergstein complied with this request in his reply memorandum, by simply stating that he did not work on any other cases en route to court nor transact business via telephone. (Bergstein Reply Affm. ¶ 8.)

Defendant's response, completely devoid of citations of legal basis in opposition to plaintiff's application, overlooked our prior decisions in which we reduced attorneys' fees for travel time by 50% because of the lack of productivity that results when an attorney drives himself to appointments. *See, e.g., Lilly*, 910 F.Supp. at 951 (relying on *Cohen v. West Haven Bd. of Police Comm'rs*, 638 F.2d 496, 505 (2d Cir.1980), which held that different rates of compensation may be awarded for different tasks); *Broome v. Biondi*, 17 F.Supp.2d 230, 234–35 (S.D.N.Y.1997); *Williams*, 975 F.Supp. at 324; *Wilder v. Bernstein*, 975 F.Supp. 276, 283–84 (S.D.N.Y.1997); *Loper*, 853 F.Supp. at 720. However, this Court will not allow defense counsel's laxity to impose an added burden on the taxpayers of the Town. In exercise of this Court's broad discretion in determining reasonableness of attorneys' fees, *see Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir.1979), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the travel time is hereby decreased by 50%, for a total of $1,675.

#### b. *Comparison to Defendant's Time Expenditures*

■ Defendant argues that plaintiff's fee request for over 150 hours is unreason-

able because Richard Stoloff, counsel for defendant in the liability phase of the underlying civil action, expended less than 60 hours.[2] Defendant has drawn this conclusion from its review of legal bills submitted by Stoloff (Newberg Affm. ¶ 14), but fails to submit those records in support of its present contention. Plaintiff argues that Stoloff, unlike plaintiff's counsel, did not: represent defendant for the damages portion of the case or prepare the fee application, together totaling over 22 hours of plaintiff's counsel's time; move for a restraining order and a preliminary injunction; file two motions for summary judgment and the corresponding reply briefs; or file a Supplemental Complaint. (Pl. Reply Mem. Supp. Atty. Fees at 5, 6.)

The Court's inspection of the record finds that Stoloff did file answers to both the original and the Supplemental Complaint as well as file a brief in response to the motion for summary judgment for liability. However, because Stoloff's legal bills have not been submitted to this Court and we have no other evidence supporting defendant's contention, we must disregard this argument. Furthermore, the time expended by one party is not necessarily indicative of the time that the other should have spent. For example, in the instant fee application, defendant did not refer to any legal authority in opposition to the fee application, even though such authority does exist. It made relatively perfunctory attempts to argue against the propositions advanced by plaintiff's attorney whereas Sussman and Bergstein strongly advocated these propositions. In sum, the fees will not be reduced in view of Stoloff's assertedly lesser time expenditures.

#### c. *Plaintiff's Failure to Settle*

■ This Court ordered that "[i]f plaintiff can prove he received actual injuries as a result of the enforcement of those ordinances against him he may seek dam-

---

**2.** On July 19, 2000, Marvin Newberg was substituted for Stoloff, as attorney for defen-

dant Town, to represent it in the damages hearing as well as the instant fee application.

ages therefor pursuant to 42 U.S.C. § 1983." *Knoeffler*, 87 F.Supp.2d at 333. Defendant stipulates that subsequent to plaintiff's deposition, plaintiff's counsel was "asked ... to convey a settlement offer ... in the hopes that the additional expense of a trip to White Plains and conducting of the damages trial could be avoided and parties could save on attorney's fees" to which there was no response. Defendant questions whether this offer was ever conveyed to plaintiff and believes that it should not have to provide compensation for the damages hearing that would not have occurred if the case had settled. We disagree.

Federal Rule of Civil Procedure 68 states that:

> [a]t any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued .... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

■■■■ The word "costs" in Rule 68 includes "all costs properly awardable under the relevant substantive statute or other authority." *Marek v. Chesny*, 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Because attorneys' fees are recoverable as part of the costs under § 1988, they are subject to Rule 68. *See id.* Therefore, if the defendant makes an offer of judgment pursuant to Rule 68 which is not accepted by the plaintiff, there is a possibility that plaintiff will be precluded from receiving all fees incurred subsequent to that offer. *See, e.g., Jolly v. Coughlin*, No. 92 Civ. 9026, 1999 WL 20895 (S.D.N.Y. Jan.19, 1999). Rule 68 requires "plaintiffs to 'think very hard' about whether continued litigation is worthwhile." *Id.* at *3 (quoting *Marek*, 473 U.S. at 11, 105 S.Ct. 3012).

In *Cooper v. State of Utah*, 894 F.2d 1169 (10th Cir.1990), the district court reduced the attorney's fees by half because it found that the defendants had attempted to settle the case in order to avoid possible liability for further attorney's fees. *See id.* at 1170. The Tenth Circuit held that the trial court abused its discretion. The defendants did not avail themselves of a Rule 68 offer of judgment which "provides a practical tool by which parties may protect against costs." *Id.* at 1172. Because it was not utilized, the "adjustment of fees based on settlement negotiations [was] not well-founded." *Id.*

Similarly, in this case, the record does not show that an offer of judgment pursuant to Rule 68 was made. Rule 68 requires that the defendant's offer be "served" upon the adverse party. Although it does not specifically require a written offer, some courts have used this language as a basis for its requirement. *See Grosvenor v. Brienen*, 801 F.2d 944, 948 (7th Cir.1986) (stating that an oral offer cannot be served); *McKever v. Vondollen*, 681 F.Supp. 999, 1002 (N.D.N.Y. 1988) (holding that a oral offer made during a conference before the court did not satisfy Rule 68). Therefore, defendant's oral offer to engage in settlement discussions does not rise to an offer of judgment pursuant to Rule 68. A downward adjustment of the fee award on this account will not be made.

#### d. *Fee Padding*

■■■■ At the conclusion of the damages hearing held on July 5, 2000, plaintiff's counsel requested permission to submit post-hearing letter briefs. The Court ruled that the "amount of damages is not sufficient to justify a posttrial briefing;" for this reason the Court rendered its decision orally. (Damages Tr. at 48.) Defendant argues that the offer to submit a post-hearing letter brief evidenced an intent by plaintiff's counsel to pad their fees. On the contrary, plaintiff's counsel showed an intent to expedite the process by sub-

mitting the memorandum of law in support of injunctive relief as the memorandum in support of plaintiff's first motion for summary judgment.[3] There was no intent on the part of plaintiff's counsel to engage in fee padding.

### e. *Excessive Hours*

#### i. *Supplemental Complaint and Motion for Summary Judgment*

 Defendant argues that 35.3 hours expended by Bergstein in conjunction with the Supplemental Complaint and moving and reply in support of the second summary judgment motion was excessive. The Court disagrees.

Plaintiff amended the original Complaint to include allegations challenging the constitutionality of the Town's revised sign law as well as Chapter 44 of the Code. The Supplemental Complaint adds an introductory paragraph as well as nine one-to-two sentence paragraphs describing the newly challenged provisions. (Supp.Complt.Intr., ¶¶ 26–24.) Plaintiff did not merely reiterate the laws but selected sections as to which there was an "arguable basis" for attack under the First Amendment. (Pl. Reply Mem. Supp. Atty. Fees at 8.) The summary judgment briefs in question contain numerous arguments in opposition to the Town's laws, including: allegations of standing; various constitutional arguments against the constitutionality of three of the Town's laws; the attempt to impose individual liability upon Grifo and recover damages against him; and claims for damages against the Town. Upon review of the papers in question, the Court finds that 35.3 hours is a reasonable amount of time to spend researching the new law and arguments in opposition thereto, as well as drafting and editing the papers.

The motion practice in the underlying civil action was expedited as a result of the decision to convert the preliminary injunction motion into a summary judgment motion. *See supra,* n. 3. Defendant questions whether spending such large amounts of time on the summary judgment motion was reasonable or necessary given its expedited nature. However, the mere fact that the motion practice is expedited, does not mean that the underlying issues are of any less importance. Attorneys are expected to advocate their positions vigorously in all of the proceedings, regardless of their expedited nature.

#### ii. *Compilation of fees*

 Defendant concedes that the attorney may bill his client for the time expended in compiling the list of hours expended on the case. However, defendant contends that 2.5 hours to compile this list is excessive when this should have been done in the regular course of business. Furthermore, defendant argues that plaintiff's claim for 4.75 hours for preparing the motion for attorneys' fees is excessive.

 It is well-settled law that a prevailing party is entitled to reimbursement for the time expended in the preparation of the fee application. *See Gagne,* 594 F.2d at 343–44. Therefore, plaintiff may receive compensation for the time spent by his attorneys for compiling the hours expended by them on this case. It is true that time sheets must be kept on a daily basis and that in order to receive attorneys' fees, the prevailing party must

---

3. Plaintiff commenced the action by applying for injunctive relief of the enforcement of the original Code. In support thereof, plaintiff submitted memoranda of law arguing against the Code's constitutionality. On November 5, 1998, after the Court ruled on the application for injunctive relief, plaintiff moved for summary judgment. The memorandum of law in support of injunctive relief was submitted in support of the summary judgment motion.

Thereafter, the Town revised the Code. At a conference held before this Court on October 2, 1999, plaintiff was granted permission to file a Supplemental Complaint and a new motion for summary judgment to include additional constitutional claims with respect to the revised Code as well as those claims relative to Chapter 44 of the Code. Accordingly, the first motion for summary judgment was withdrawn by plaintiff's counsel as moot.

submit contemporaneous time records. *See Carey,* 711 F.2d at 1147. "The rule in this Circuit prohibits the submission of reconstructed records, where no contemporaneous records have been kept." *Lenihan v. City of New York,* 640 F.Supp. 822, 824 (S.D.N.Y.1986) (Conner, J.) (stating that the original time sheets are not required; accepting computerized printouts). However, the Court is aware that an attorney must inspect the time sheets and prepare a compilation for the litigation. In *Wilder,* the court found that it was reasonable for the plaintiff's attorney to spend 14.75 hours in computing three attorneys' time for a case that spanned two years. 975 F.Supp. at 283. In this case, Bergstein reviewed daily time sheets that dated from April 16, 1998 to June 29, 2000. Accordingly, this Court finds that it is reasonable for one attorney to spend 2.5 hours in computing the time expended by him over a two-year period.

Moreover, the Court will not decrease the amount of attorneys' fees based upon the fact Bergstein's expenditure of a total of 4.75 hours in preparing the motion for attorneys' fees. The fee log was not the only exhibit included within the application for attorneys' fees. Bergstein submitted affirmations written by himself and Sussman and memoranda of law in support of the fee application. Furthermore, Sussman did not submit a bill for any time he expended on his affirmation or compilation of hours in connection with the fee application.

### iii. *Review of Intake File*

■ Defendant objects to the 1.25 hours billed by Sussman on March 18, 1998, for "Review of letters and materials from client re: sign ordinance" (Sussman Affm., Ex. A) as well as the 3.15 hours billed by Bergstein on April 16, 1998 for the initial "review of intake file." (Bergstein Affm., Ex. A.) Defendant argues that Knoeffler was a "prolific letter writer" and wrote letters concerning subjects other than the sign ordinance including complaints of the reassessment practices in the Town and various public officials. (Newberg Affm. ¶ 15.) Defendant does not dispute that plaintiff's counsel read all of the letters provided by plaintiff, but argues that most of the time expended by plaintiff's attorney in this initial stage was unrelated to the underlying case. According to defendant, it should not be required to pay for time expended on immaterial issues raised by plaintiff. (*Id.*)

However, the Court finds that the time spent by Bergstein and Sussman to assess the claim and underlying facts was reasonable. Even if plaintiff was a "prolific letter writer" as defendant describes him, his attorneys had to read all of his letters completely in order to determine if they contained material relevant to the case.

### iv. *Filing the Temporary Restraining Order*

■ In this case, the fee log shows that on September 22, 1998, Bergstein spent two hours filing the Temporary Restraining Order ("TRO"). (Bergstein Affm., Ex. A.) Plaintiff's counsel contends that this included waiting for the clerk to stamp, review and process the paperwork as well as determine if a judge was available to grant the TRO. (Bergstein Reply Affm. ¶ 10.)

■ The courts in this district are in agreement that "[f]iling, delivery, service of papers and other similar administrative tasks are not usually considered recoverable expenditures of time for attorneys' fees." *Broome,* 17 F.Supp.2d at 236 (citing *Society for Good Will to Retarded Children v. Cuomo,* 574 F.Supp. 994, 999 (E.D.N.Y.1983), *vacated on other grounds,* 737 F.2d 1253 (2d Cir.1984)); *Giuliani,* 111 F.Supp.2d at 390–91. Tasks such as "faxing, filing, photocopying, delivery, drafting affidavits of service, and service of papers" are considered clerical and should be billed in accordance therewith, e.g., $50 per hour. *See Lawson v. City of New York,* No. 99 Civ. 10393, 2000 WL 1617014, at * 2 (S.D.N.Y. Oct.27, 2000).

Plaintiff's counsel argues that the hours expended during the filing also included a telephone call from Bernstein to Stoloff to inquire about the latter's availability for the TRO hearing. (Pl. Reply Affm. Supp. Atty Fees ¶ 10.) Although the phone call to the Town's counsel could lead to an award of the full hourly rate for the time of the call, the phone call was not included within the fee log. Bergstein failed to provide a specific breakdown of the time devoted to this conversation. Therefore, the entire two hours will be charged at $50 per hour.

## II. *Reduction of Lodestar*

Although there is a "'strong presumption' that the lodestar represents the 'reasonable fee,'" the consideration of other factors may be lead to an increase or decrease of such figure. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (citations omitted). The degree of success may decrease the amount awarded. *See La-Rouche*, 20 F.3d at 71. The party requesting a departure from the lodestar has the burden of establishing the propriety of such departure in the calculation of a reasonable fee. *See Dague*, 505 U.S. at 562, 112 S.Ct. 2638; *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992).

### A. *Unsuccessful claims*

In the underlying civil action, plaintiff's claims against the Building Supervisor were dismissed because "[n]o reasonable trier of fact could find that Grifo acted objectively unreasonably" and assuming they could, he was "entitled to qualified immunity." *Knoeffler*, 87 F.Supp.2d at 329. Defendant acknowledges "the body of case law which provides that fees can be awarded for work even upon unsuccessful issues if the Plaintiff is the prevailing party on one or more issues in the litigation," but argues that it is another factor in the exercise of this Court's discretion of whether the fees are reasonable, because "an unknown portion of Plaintiff's claimed time for legal work was necessarily devoted towards litigating those issues." (Newberg Affm. ¶ 6.)

Presumably defendant is referring to the analysis established in *Hensley* that is to be followed when a party is considered prevailing, even though he did not succeed on all of those claims asserted in the underlying civil action. Whether the fee can be adjusted upward or downward depends upon a two-part inquiry. First, the issue is whether the plaintiff's unsuccessful claims were related to those on which she prevailed. Second, the Court must ask "whether the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award [ ]." 461 U.S. at 434, 103 S.Ct. 1933.

### 1. *Failure to Prevail on Claims Unrelated to the Successful Claims*

The issue is whether the claims against the individual defendants and the municipality are related. Because the Supreme Court treats unrelated claims as if they should have been brought in a separate and distinct lawsuit, no fees may be awarded for services expended on unsuccessful, unrelated claims. *See id.* at 434–35, 103 S.Ct. 1933. Related claims include those based upon common facts or similar legal theories. *See id.* In such a case, all of the attorney's time is considered to be spent on the litigation as a whole; the court cannot divide the hours on a claim-by-claim basis. *See id.* at 435, 103 S.Ct. 1933.

Defendant does not even attempt to explain how the claims against the individual defendants were distinct either factually or legally from the constitutional claims asserted against the Town. In any event, the Court finds that the claims asserted by plaintiff in this case were related. They were grounded on common facts and related legal theories, namely plaintiff's erection of signs on his property and the infringement of his First Amendment right to free speech. The mere fact that plain-

tiff named several defendants does not argue the contrary.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435, 103 S.Ct. 1933. The results in this case were clearly favorable to plaintiff. The Town's original zoning ordinance and the amendment thereto were both deemed unconstitutional as a matter of law. Furthermore, plaintiff was awarded compensatory damages in the amount of $4,308. (Damages Tr. at 51.) Accordingly, plaintiff should recover a fully compensatory fee which includes all hours expended on the litigation, and should not be reduced simply because he failed to prevail on every claim.

### 2. *Limited Success*

 Even where the claims are interrelated, if the plaintiff achieved a limited success, the lodestar amount may be considered excessive. *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. The focus surrounds the results obtained. *See id.* The lodestar may be reduced when the plaintiff received only nominal damages in the underlying civil action. *See Lilly,* 910 F.Supp. at 952 (citing *Grant,* 973 F.2d at 101; *United States Football League v. National Football League,* 887 F.2d 408, 411–12 (2d Cir.1989)). The district court has broad discretion in reducing the amount of the award in order to reflect the plaintiff's limited success. *See Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933; *Farrar,* 506 U.S. at 115, 113 S.Ct. 566; *Lilly,* 910 F.Supp. at 953. However, we conclude that no reduction in fees is warranted in this case.

### a. *Proportionality*

 Defendant argues that the fee award should be decreased because the Court awarded plaintiff only $4,308 in damages. However, there is no proportionality requirement under § 1988; the amount of attorneys' fees do not have to relate to the amount of damages recovered by plaintiff. *See Riverside v. Riviera,* 477 U.S. 561, 574–75, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."); *Grant,* 973 F.2d at 102 ("A presumptively correct 'lodestar figure' should not be reduced simply because a plaintiff recovered a low damage award.") (quoting *Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 526 (2d Cir.1991)); *DiFilippo v. Morizio,* 759 F.2d 231, 235 (2d Cir. 1985) ("We believe a reduction made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation."). A rule of proportionality would contravene the intent of Congress, because it would deny civil rights plaintiffs, with potentially small damages, full redress in the courts. *See Riverside,* 477 U.S. at 576, 578, 106 S.Ct. 2686.

However, the Supreme Court has warned that if the award is "technical" or "de minimus" the prevailing party should be denied attorney's fees. *Farrar,* 506 U.S. at 113, 115, 113 S.Ct. 566 (holding that the award of $1 after 10 years of litigation where the plaintiff demanded $17 million in damages constituted nominal damages and nothing more than the mere satisfaction that a federal court agreed with the plaintiff that his rights had been violated). In *Lilly,* this Court stated that a jury award of $11,500, when the plaintiff sought $6 million in damages, was neither technical nor de minimus. 910 F.Supp. at 953. In this case, three of the Town's laws were declared unconstitutional and plaintiff was granted $4,308 in damages. Plaintiff did not seek any specified amount in damages but left the determination in the sole discretion of the Court. (Supp. Complt. Part V.) This award is neither de minimus nor technical. Although a court may adjust the fees sought by considering the limited success in the underlying action, we conclude that the attorneys' fees in this case are reasonable. "[T]he impor-

tance of plaintiff's victory should not be belittled by focussing [sic] solely on the monetary measure of her judgment." *Lilly*, 910 F.Supp. at 953 (citations omitted).

### b. *No Reduction in Fee for Lack of Success on Claim Asserted Against Grifo*

As stated above, the unsuccessful claim asserted against Grifo was not completely unrelated to the successful claims asserted against the Town. The Court also finds that plaintiff did achieve substantial success when we declared that all of the Town's relevant laws were unconstitutional. In addition, plaintiff's counsel did not expend a vast amount of time on the claims asserted against the individual defendants. The only reference to Grifo in the Complaint concerned several paragraphs which: described him as the one who served plaintiff with a subpoena regarding the violation of the Town's zoning ordinance; alleged that he was being sued in this individual capacity for enforcement of the subpoena; and anticipated a qualified immunity defense. (Supp.Complt. ¶¶ 5, 14, 25, 39.) Plaintiff's motion for summary judgment included only a small section in reference to this claim in plaintiff's reply memorandum. (Pl. Reply Mem. Supp. Summ. J. at 9–11.) Therefore, no reduction in the lodestar is warranted.

### B. *Other Factors that Should Decrease the Lodestar Figure*

Defendant contends that its lack of maliciousness should mitigate any award and cites this Court's Opinion and Order on liability where we stated that "Defendants' laudable efforts to preserve the attractiveness of the town's residential areas, enhance the homeowners' enjoyment of their property, attract new residents and main-

tain property values deserve all the support the courts can properly give." *Knoeffler*, 87 F.Supp.2d at 333.

Good faith on the part of a losing defendant does not qualify as a circumstance which would free the defendant from § 1988 liability.[4] *See generally* 2 MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, SECTION 1983 LITIGATION: STATUTORY ATTORNEY'S FEES § 3.12 (3d ed.1991) (recognizing that although this argument is usually raised by a defendant enforcement official sued in his official capacity, lower courts are recognizing that a defendant's good faith will not insure against the payment of attorneys' fees). The purpose behind § 1988 was to "ensure 'effective access to the judicial process.'" *Hensley*, 461 U.S. at 429, 103 S.Ct. 1933 (quoting H.R. REP. NO. 94–1558, p. 1 (1976)). Both the Senate and House Reports refer to twelve factors that should be considered in determining the amount of the fee:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. 1933 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974); AMERICAN BAR ASSOCIA-

---

4. Bad faith on the part of the plaintiff will support the award of attorneys' fees to a prevailing defendant under § 1988. However, even in that situation the critical factor is whether the plaintiff's claim was "clearly meritless." *Rounseville v. Zahl*, 13 F.3d 625,

632 (2d Cir.1994); *San Filippo v. Lumberman's Mut. Cas. Co.*, No. 81 Civ. 19, 1987 WL 11554, at *2 (S.D.N.Y. May 18, 1997) ("Awards [to the prevailing defendant under § 1988] are not predicated upon the bad faith of a litigant.").

TION CODE OF PROFESSIONAL RESPONSIBILITY DR 2–106). As indicated, good faith on the part of the defendant is not a factor that is relevant to the assessment of fees. As the First Circuit recognized, the purpose behind the Civil Rights Attorney's Fees Awards Act is not to punish losing defendants, similar to punitive damages, but is meant to compensate prevailing plaintiffs. *See Coalition for Basic Human Needs v. King,* 691 F.2d 597, 602 (1st Cir.1982). Accordingly, whether the Town intended to violate plaintiff's First Amendment right of freedom of speech will not be a factor in the reduction of the award.

■ Defendant reminds this Court that the requested legal fees would constitute a hardship on the taxpayers of the Town. (Newberg Affm. ¶ 4.) It fails, however, to cite any law exempting municipalities from § 1988 or recognize that this Court has awarded attorney fees in successful actions asserted against municipalities. *See, e.g., Lenihan,* 640 F.Supp. at 822. Furthermore, this Court is protecting the taxpayers by refusing to grant Sussman's request for $25 increase in his hourly rate and full compensation for the time expended during travel and filing court documents. Although the Court does sympathize with the taxpayers of the Town, it cannot exempt a municipality who clearly violated the law.

### III. *Costs*

Pursuant to § 1988, in addition to compensation for his attorneys' fees, plaintiff is also allowed to recover his attorneys' expenses. *See Carrero,* 685 F.Supp. at 909. Thus, plaintiff shall be reimbursed $192.62 for the following expenses: filing of the complaint ($150); mailings to Newberg ($16.50); and photocopying of exhibits and documents as requested by Newberg ($26.12). (Sussman Affm., Ex. B.)

### CONCLUSION

For the foregoing reasons, we conclude that plaintiff is entitled to $33,155 in attorneys' fees plus $192.62 in costs, for a total amount of $33,347.62.

SO ORDERED.